IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE STATE OF LOUISIANA | * | CIVIL ACTION NO.: |
| | * | |
| PLAINTIFF | * | |
| VERSUS | * | |
| | * | |
| SANOFI-AVENTIS U.S. LLC, ET AL., | * | |
| | * | |
| DEFENDANTS | * | JURY TRIAL REQUESTED |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**NOTICE OF REMOVAL**

In accordance with 28 U.S.C. §§ 1442(a) and 1446, Defendant Express Scripts Administrators, LLC d/b/a Express Scripts hereby removes *State of Louisiana v. Sanofi-Aventis U.S. LLC*, Case No. C-72979121, from the 19th Judicial District Court East Baton Rouge Parish to the United States District Court for the Middle District of Louisiana. A true and correct copy of the operative pleading, the Amended Petition for Injunctive Relief and Restitution, including the served Supplemental and Amending Citation, is attached hereto as **Exhibit A** and cited herein as "Am. Pet."

**INTRODUCTION**

1. Removing Defendant Express Scripts Administrators, LLC d/b/a Express Scripts ("Express Scripts") is a significant contractor with the federal government. Express Scripts, through its affiliates, currently contracts with the United States Department of Defense ("DoD") to provide services to members of the DoD's TRICARE health care program across the country, including in Louisiana. Attached as **Exhibit B** is a true and correct copy of the public contract between the Department of Defense and Express Scripts, Inc. ("ESI"), an Express Scripts affiliate, Contract No. HT-9402-14-D-0002 (the "TRICARE Contract"), with certain redactions consistent with the Freedom of Information Act.

2. Under the TRICARE Contract, ESI and its affiliates provide pharmacy benefit management services for the DoD, including active-duty service members, their families, and veteran retirees. As of 2019, over 290,000 veterans reside in Louisiana.[1] Many of those veterans depend on TRICARE for their prescription drugs, including insulin.

3. Express Scripts is the ESI affiliate licensed to perform third-party administrator and pharmacy benefit management services on ESI's behalf for TRICARE beneficiaries in Louisiana. Thus, the obligations the DoD imposes on ESI apply equally to Express Scripts for TRICARE beneficiaries in Louisiana.

4. ESI also contracts with other affiliates of Express Scripts, such as mail-order pharmacy entities, to provide additional services to members of the DoD's TRICARE health care program across the country and in Louisiana.

5. Under the agreement with DoD, ESI and its affiliates are directed to charge TRICARE beneficiaries only such copayments as are dictated by the DoD, and to dispense medications purchased by the DoD at rates negotiated directly between the federal government and drug manufacturers. Express Scripts must similarly comply with such dictates in Louisiana.

6. In this action, the state of Louisiana alleges that the prices paid by the citizens of Louisiana for certain insulin products are artificially inflated by a sprawling "Insulin Pricing Scheme" between certain Pharmacy Benefit Managers ("PBMs") and certain insulin manufacturers.

7. Some of those Louisiana citizens allegedly injured by the scheme are TRICARE beneficiaries. Certain TRICARE beneficiaries acquire insulin products through the TRICARE

---

[1] *See, e.g.*, National Center for Veterans Analysis and Statistics, Louisiana State Summary, available at https://www.va.gov/vetdata/docs/SpecialReports/State_Summaries_Louisiana.pdf. A true and correct copy is attached as **Exhibit D**.

2

Home Delivery/Mail Order Pharmacy ("TMOP") administered by Express Scripts under the TRICARE Contract. The formulary used for TRICARE beneficiaries, the prices the federal government pays for the insulin products, and critically, the copayments Express Scripts must ensure beneficiaries pay, are all dictated by federal law and the TRICARE Contract.

8. Louisiana alleges that the Insulin Pricing Scheme injured its residents directly because they pay higher "out-of-pocket" costs as a result of the scheme. *See* Am. Pet. ¶¶ 141, 176.

9. For relief, Louisiana prays for, *inter alia*, "restitution and disgorgement . . . for Defendants' violations," "actual damages," treble damages, and "additional civil penalties" and "additional damages" allowable under the law. *See* Am. Pet. at pp. 45–46.

10. In addition, Louisiana seeks the payment of a civil penalty under Louisiana Unfair Trade Practices Act ("LUTPA") for each purchase of the at-issue drug. Am. Pet. ¶ 187; *see also id.* at p. 46. Louisiana also seeks to recover a civil fine under the Louisiana Monopolies Act ("LMA") for each "sale and/or resale in Louisiana of the at-issue diabetes medications at supra-competitive prices." Am. Pet. ¶ 202; *see also id.* at p. 46.

11. Louisiana thus seeks the return of all out-of-pocket costs any Louisiana resident has paid for insulin on top of civil penalties or fines for each purchase and/or sale of the at-issue drugs in Louisiana. TRICARE beneficiaries who receive insulin through the mail-order pharmacies administered by Express Scripts and TRICARE beneficiaries who paid copays fixed by the federal government and implemented by Express Scripts at retail network pharmacy locations are among the individuals who paid those out-of-pocket costs for the at-issue drugs.

12. Under the TRICARE Contract, Express Scripts had no choice but to ensure the charging of the copayments from TRICARE beneficiaries that Louisiana now seeks as restitution and for which Louisiana also seeks civil penalties and fines.

13. Accordingly, and as more fully explained below, Express Scripts has colorable government contractor immunity and preemption defenses to Louisiana's claims, permitting Express Scripts to remove the entire action under 28 U.S.C. § 1442(a)(1).

## BACKGROUND

14. On March 14, 2023, the State of Louisiana filed a Petition in the 19th Judicial District Court East Baton Rouge Parish.

15. Express Scripts was served with a Citation and the original Petition on March 20, 2023.  A true and correct copy of the Citation and Original Petition served on Express Scripts is attached hereto as **Exhibit C.**

16. Before Express Scripts responded to the Petition, but after it was served, Louisiana filed an Amended Petition for Injunctive Relief and Restitution on March 27, 2023, principally adding an additional claim under the Louisiana Monopolies Act.  That petition is the operative pleading in the action.  Express Scripts was served with a Supplemental and Amended Citation and the Amended Petition on March 30, 2023.

17. The State brings its action against two categories of defendants: "Manufacturer Defendants" and "Pharmacy Benefit Manager Defendants."

- The State alleges that the "Manufacturer Defendants" are Sanofi-Aventis U.S. LLC and Novo Nordisk, Inc.

- The State alleges that the "PBM Defendants" are CaremarkPCS Health, LLC, CVS Health Corp, Express Scripts Administrators, LLC d/b/a/ Express Scripts, and OptumRx, Inc.

18. Louisiana alleges an "Insulin Pricing Scheme" between the Manufacturer Defendants and the PBM Defendants to artificially inflate the price of insulin and other diabetes medications.  *See* Am. Pet. ¶¶ 101–124.

19. Louisiana asserts four causes of action against Express Scripts: (i) violations of the LUTPA (Am. Pet. ¶¶ 179–190), (ii) violations of the Medical Assistance Programs Integrity Act (*id.* ¶¶ 191–200); (iii) violations of the LMA (*id.* ¶¶ 201–208), and (iv) unjust enrichment (*id.* ¶¶ 209–216).

20. The Attorney General purports to bring the action "on behalf of the State of Louisiana, as a statutory enforcement action for violations of the laws of Louisiana as well as in its proprietary and *parens patriae* capacities." Am. Pet. ¶ 9.

21. Louisiana seeks to recover not only for its own alleged injuries but also injuries allegedly suffered by Louisiana residents. *See* Am. Pet. ¶¶ 185, 187.

## VENUE

22. Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district embracing the 19th District Court, Parish of East Baton Rouge, the court from which removal is sought. *See* 28 U.S.C. § 98(b).

## GROUNDS FOR FEDERAL-OFFICER REMOVAL

23. The federal-officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1).

24. The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal-officer-removal] statute." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969)). Accordingly, "in contrast to most questions of federal jurisdiction, federal officer removal must be liberally construed." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019) (internal quotation marks omitted); *see also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc) ("The Court has

5

consistently urged courts to avoid 'a narrow, grudging interpretation of § 1442(a)(1).'" (citations omitted)).

25. In the Fifth Circuit, a party removing under the federal-officer-removal statute must show that (i) it is a "person" within the meaning of the statute, (ii) it acted "pursuant to a federal officer's directions," (iii) the charged conduct is connected with or related to an act pursuant to a federal officer's directions, and (iv) it asserts a "colorable federal defense." *Latiolais*, 951 F.3d at 296. Express Scripts satisfies all four elements here.

### i. The Removing Defendant is a "Person" Within the Statute's Meaning.

26. Express Scripts is a "person" under the federal-officer removal statute because "corporate entities qualify as a person under § 1442(a)(1)." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

### ii. Express Scripts Acted "Pursuant to a Federal Officer's Directions."

27. Private entities "act[] under" a federal officer when involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) (internal quotation marks and citations omitted).

28. The DoD is required by law to enter into contracts for the provision of healthcare services to TRICARE members. *See* 10 U.S.C. § 1073a. Congress also has required the Secretary of Defense to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE. 10 U.S.C. § 1074g.

29. The DoD entered into such a contract with ESI to directly and through its affiliates provide pharmacy benefits to members of the DOD's TRICARE health care program across the country, including in Louisiana. *See* Exhibit B. Express Scripts, in turn, provides those benefits under the TRICARE Contract for TRICARE beneficiaries in Louisiana.

30. Express Scripts provides PBM services and administers TMOP, the DoD's mail-order pharmacy program, under the detailed requirements of the contract and lengthy Statement of Work with the DOD. The Statement of Work is "Section C" of the contract and is available on pages 63–121 of Exhibit B.

31. The DoD dictates nearly every single aspect of Express Scripts' responsibilities in supporting TRICARE. The TRICARE Contract requires the use of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products." Ex. B at § C.1.4. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee." *Id.* When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, Express Scripts serves as only a "fiscal intermediary on behalf of DoD to pay for all authorized pharmaceutical and supplies dispensed for eligible beneficiaries at retail pharmacies." *Id.* at § C.1.6. Or, as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies. *Id.*

32. These requirements are all mandated by Congress. 10 U.S.C. § 1074g(a)(2)(A) (requiring program to include a "uniform formulary" and that inclusion on the formulary "shall be based on the relative clinical and cost effectiveness of the agents"); § 1074g(b) (requiring the establishment of a "Pharmacy and Therapeutics Committee"). Congress not only requires cost-sharing that favors generics, but it spelled out the precise cost-sharing amounts for the years 2018 through 2027 in a table written into the statute:

| For: | The cost-sharing amount for a 30-day supply of a retail generic is: | The cost-sharing amount for a 30-day supply of a retail formulary is: | The cost-sharing amount for a 90-day supply of a mail order generic is: | The cost-sharing amount for a 90-day supply of a mail order formulary is: | The cost-sharing amount for a 90-day supply of a mail order non-formulary is: |
|---|---|---|---|---|---|
| 2018 | $11 | $28 | $7 | $24 | $53 |
| 2019 | $11 | $28 | $7 | $24 | $53 |
| 2020 | $13 | $33 | $10 | $29 | $60 |
| 2021 | $13 | $33 | $10 | $29 | $60 |
| 2022 | $14 | $38 | $12 | $34 | $68 |
| 2023 | $14 | $38 | $12 | $34 | $68 |
| 2024 | $16 | $43 | $13 | $38 | $76 |
| 2025 | $16 | $43 | $13 | $38 | $76 |
| 2026 | $16 | $48 | $14 | $44 | $85 |
| 2027 | $16 | $48 | $14 | $44 | $85 |

10 U.S.C. § 1074g(a)(6)(A).

33. Express Scripts supports TRICARE's pharmacy benefit program under the careful direction of the DoD. When it causes any copayment to be charged to any TRICARE beneficiary for any product, including the insulin products at issue in this action, it does so in the manner and according to the directions carefully prescribed by the DoD. Ex. B at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure").

34. For TMOP, Express Scripts must collect copayments from beneficiaries in accordance with the specific cost-sharing matrix set forth in the TRICARE Reimbursement Manual ("TRM").[2] *Id.* at § C.8.2 ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B. The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"). Express Scripts has a similar obligation to "ensur[e] that the appropriate copayment is collected at retail network pharmacies." *Id.*

---

[2] The matrix included in the TRICARE Reimbursement Manual is available at https://manuals.health.mil/pages/DisplayManualHtmlFile/2021-09-03/AsOf/TR15/C2ADB.html. A true and correct copy of the matrix is attached hereto as **Exhibit E.**

35. In short, as the Fourth Circuit recently put it, Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government, as the TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program." *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253–54 (4th Cir. 2021).

36. Express Scripts performs the day-to-day administration in Louisiana pursuant to a lengthy and detailed contract from which Express Scripts lacks the discretion to depart. Express Scripts is thus "acting under" a federal officer when carrying out the TRICARE pharmacy program.

      iii.    **Express Scripts' Alleged Conduct Is Connected With or Related to An Act Pursuant to a Federal Officer's Directions.**

37. To "relate to" an act for federal officer removal, a defendant must show only that its alleged conduct is "'connected or associated with' (or 'related to') a federal directive." *St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.* (*St. Charles II*), 990 F.3d 447, 454 (5th Cir. 2021) (quoting *Latiolais*, 951 F.3d at 291, 296).

38. Louisiana alleges that the Insulin Pricing Scheme injured its citizens directly because they pay higher "out-of-pocket" costs. *See* Am. Pet. ¶¶ 141, 176. Louisiana alleges that as a result of the alleged scheme, "diabetic residents [have] been overcharged by millions of dollars in out-of-pocket costs." Am. Pet. ¶ 176; *see also id.* ¶ 141 (Louisiana diabetics have "made out-of-pocket payments based on the false list prices generated by the scheme").

39. Louisiana also seeks the payment of a civil penalty for each purchase of the at-issue drugs in Louisiana. Am. Pet. ¶ 187 ("Each at-issue purchase made within the State for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of LUTPA"); *id.* at p. 46 (praying for "civil penalties under LSA-R.S. 51:1407 [of LUTPA] for Defendants' violations"). In addition, Louisiana seeks the payment of a civil fine for each sale or

9

resale of the at-issue drugs in Louisiana. *Id.* ¶ 202 ("Each sale and/or resale in Louisiana of the at-issue diabetes medications at supra-competitive prices constitutes an independent violations [sic] of the Louisiana Monopolies Act"); *id.* at p. 46 (praying for "civil fines as allowed under LSA-R.S. 51:122 and 51:137 [under the LMA] for Defendants' violations").

40. As explained above, for those Louisiana residents receiving insulin through TRICARE—either from retail pharmacies or through the TMOP—the out-of-pocket costs those residents must pay, and that Express Scripts ensures is collected, are dictated by federal law and Express Scripts' direction from the DoD.

41. Express Scripts' conduct of ensuring the collection of copayments from TRICARE beneficiaries according to the schedules mandated by the federal government is, at a minimum, associated with Louisiana's allegations that Express Scripts' conduct causes diabetic Louisianans to have higher out-of-pocket costs.

### iv. Express Scripts Has Colorable Federal Defenses.

42. For federal-officer removal purposes, a defense only needs to be colorable. *Latiolais*, 951 F.3d at 296 (quoting *Jefferson Cnty.*, 527 U.S. at 431). "Colorable" is a low bar; a defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.* at 297 (quoting *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017)).

43. Here, Express Scripts can raise a colorable government-contractor immunity defense and a colorable preemption-based defense.

44. Under a traditional tort liability formulation, the federal government contractor defense applies when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about

the dangers in the use of the equipment that were known to the supplier but not to the United States. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 512 (1988).  While the test as typically expressed focuses on military equipment, "it is at least plausible that the government contractor defense could apply outside the military procurement context." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010); *see also Guillory v. Ree's Cont. Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994) (holding government contractor defense "applies to all contractors, not just military contractors, and that it applies to performance contracts, not just procurement contracts.").  Regardless of the context, the defense "applies if a contractor's obligations to the government conflict with state law such that the contractor may not comply with both." *Arlington*, 996 F.3d at 255.

45.     Louisiana alleges that LUTPA and the LMA compel Express Scripts to have charged prices and assessed copays to Louisiana residents—necessarily including TRICARE beneficiaries—lower than it allegedly charged them pursuant to the directives of federal law and the terms of the DoD contract.

46.     Based on Louisiana's allegations, Express Scripts cannot simultaneously comply with its obligations under the TRICARE Contract and contrary Louisiana law, making a federal contractor immunity defense colorable.

47.     Louisiana seeks restitution, disgorgement, and civil penalties based on the money spent by diabetics in Louisiana purchasing the at-issue drugs.  *See* Am. Pet. at p. 46 (praying for "restitution and disgorgement under LSA-R.S. 51:1407 and civil penalties under LSA-R.S. 51:1407"); *see also id.* ¶ 189 (alleging "Attorney General has the right to seek civil penalties for each violation"); *id.* ¶ 190 (alleging "Attorney General may seek any relief necessary to compensate any aggrieved persons for any loss resulting from Defendants' violations of LUTPA"). Louisiana also seeks to impose civil fines for each sale or resale of the at-issue drugs in Louisiana.

*Id.* ¶ 202; *id.* at p. 46.  But for those citizens who are TRICARE beneficiaries in Louisiana, Express Scripts had no choice but to cause the charging of the specific copayments required by the TRICARE Contract.  *See* Ex. B. at § C.8.1.1 ("The Contractor shall comply with the provisions of the DoD Uniform Formulary and its copayment structure"); *id.* at § C.8.2. ("Copayments shall be charged to beneficiaries in accordance with the TRM, Chapter 2, Addendum B.  The Contractor shall be responsible for collecting beneficiary copayments when dispensing prescriptions through TMOP"); *see also* 10 U.S.C. § 1074g(a)(6)(A).

48. Louisiana also seeks an injunction that could require Express Scripts to stop charging the copayments required under the TRICARE Contract.  Specifically, Louisiana seeks an injunction "to restrain Defendants' violations of LUTPA."  Am. Pet. ¶ 188.  Louisiana contends that collecting allegedly inflated "out-of-pocket" payments from Louisiana citizens, including those relying on the TMOP, are a violation of LUTPA. *See*, *e.g.*, Am. Pet. ¶ 181 (defining violations of LUTPA as including "[r]eceiving payments to which [Defendants] were not entitled," "[r]eceiving payments in a greater amount than that to which they were entitled," and "[c]ausing financial and physical harm to Louisiana consumers who require at-issue medications").  Louisiana therefore seeks an injunction that, if granted, would purport to prohibit Express Scripts from collecting the copayments from TRICARE beneficiaries that federal law and the TRICARE Contract mandate be collected—thereby creating another conflict between Louisiana law and Express Scripts' obligations under the TRICARE Contract.

49. In addition to government-contractor immunity, Express Scripts can raise the defense of preemption based on the federal TRICARE statute, which provides the statutory authorization for the Secretary of Defense to enter into group health-insurance contracts. *See* 10 U.S.C. §§ 1071, 1072(7), 1073(a), 1074g.  The statute and accompanying federal regulations

contain express preemption provisions. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense," to the extent the state law is inconsistent, or preemption is necessary to implement or administer the contract); 32 C.F.R. § 199.17(a)(7).

50. The same conflict between Louisiana law and Express Scripts' obligations under the TRICARE Contract described above that provides Express Scripts a colorable government contractor defense also permits Express Scripts to raise a preemption defense.

## SUPPLEMENTAL JURISDICTION

51. The Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over all other claims in this action because they form part of the same case or controversy under Article III of the United States Constitution.

## ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED.

### A. The Notice of Removal Is Timely.

52. This Notice of Removal is timely because it is filed within 30 days of service of the Petition, the "initial pleading" in this action, on Express Scripts. 28 U.S.C. § 1446(b)(1). The original Petition was served on Express Scripts on March 20, 2023.

### B. Consent is not Required.

53. The federal-officer-removal statute does not require other Defendants to consent to removal. *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) ("Removal under § 1442(a), unlike removal under § 1441, does not require the consent of co-defendants."); *see also Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir. 1980) ("[W]hen a federal officer exercises his prerogative under 28 U.S.C. § 1442(a)(1) to remove any 'civil action' commenced

against him in state court, the entire case against all defendants, federal and non-federal, is removed to federal court regardless of the wishes of his co-defendants.").

### C. Written Notice Of Removal.

54. In accordance with 28 U.S.C. § 1446(d), Express Scripts will give written notice of the filing of this Notice of Removal to all adverse parties of record in this matter, and will file a copy of this Notice with the clerk of the state court.

55. The exhibits to this Notice of Removal include all copies of all process, pleadings, and orders served upon Express Scripts in compliance with 28 U.S.C. § 1446(a).

### CONCLUSION

WHEREFORE, Defendant Express Scripts Administrators, LLC removes this Action to this Court for further proceedings according to law.

Respectfully submitted,

/s/: Keith W. McDaniel
Keith W. McDaniel (Bar No. 17992)
**MCCRANIE SISTRUNK ANZELMO HARDY MCDANIEL & WELCH LLC**
195 Greenbriar Blvd, Suite 200
Covington, LA 70433
Tel: (504) 846-8330
Fax: (800) 977-8810
Email: kmcdaniel@mcsalaw.com
-and-

Jason R. Scherr*
Patrick A. Harvey*
Lindsey Levy*
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739-3001

*Attorneys for Express Scripts Administrators, LLC d/b/a/ Express Scripts*

\*motion to appear as visiting co-counsel under
Local Civil Rule 83(b)(8) forthcoming

## **CERTIFICATE OF SERVICE**

I, Keith W. McDaniel, hereby certify that on April 19, 2023, I caused a true and correct copy of the foregoing to be emailed to attorneys for Plaintiff at:

> Nicholas J. Diez
> Matthew P. Stafford
> Medicaid Fraud Control Unit
> Michael Dupree
> Public Protection Division
> 1885 North 3rd Street, 4th Floor
> Baton Rouge, LA 70802
> Tel: (225) 326-6400
> diezn@ag.louisiana.gov
> staffordm@ag.louisiana.gov
> dupreem@ag.louisiana.gov
>
> *Attorneys for Plaintiff*

                                              */s/: Keith W. McDaniel*
                                              Keith W. McDaniel