IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| STATE OF LOUISIANA,<br><br>   *Plaintiff,*<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC, *et al.*,<br><br>   *Defendants.* | Civil Action No. 3:23-cv-00302<br><br>Removed from Case No. C-729791,<br>19th JUDICIAL DISTRICT COURT,<br>PARISH OF EAST BATON<br>ROUGE |

**SUPPLEMENTAL NOTICE OF REMOVAL**
**ON BEHALF OF CAREMARKPCS HEALTH, L.L.C.**

On April 19, 2023, defendant Express Scripts Administrators, L.L.C. d/b/a/ Express Scripts ("Express Scripts") timely and properly removed this action to this Court from the 19th Judicial District Court for the Parish of East Baton Rouge. R. Doc. 1. Defendant CaremarkPCS Health, L.L.C. ("CaremarkPCS Health") respectfully submits this Supplemental Notice of Removal providing grounds for removal on its behalf in accordance with 28 U.S.C. §§ 1442(a) and 1446, as follows:

**INTRODUCTION**

1. The Amended Petition for Injunctive Relief and Restitution ("Amended Petition") filed by the State of Louisiana, through the Honorable Jeff Landry, Attorney General ("Louisiana" or "the State"), takes aim at well-known, industry-standard arrangements between manufacturers of pharmaceutical drugs, pharmacy benefit managers ("PBMs"), and health plan sponsors.[1] PBMs perform valuable services, including negotiating with manufacturers to obtain rebates for pharmaceutical drugs, for their health-plan clients. Certain of these clients provide health plans

---

[1] The Amended Petition appears in this Court's record as Ex. A to Express Scripts' Notice of Removal, R. Doc. 1-2.

1

that are governed by the Federal Employees Health Benefits Act ("FEHBA"), a federal statute. Federal regulators explicitly authorize PBMs to negotiate for rebates on behalf of these clients, or "FEHBA carriers," and contractually require those PBMs to pass all rebates they receive onto their federal clients.

2. The State's allegations in this lawsuit challenge the important services provided by the PBM industry. The State implausibly claims that negotiated rebates are instead "secret payments" made to benefit manufacturers and PBMs "at the expense of" payors and purchasers. *See* Am. Pet. ¶¶ 25, 124. According to the Amended Petition, the PBM model has led to drastic increases in the prices of various diabetes medications, and the State therefore seeks damages for its alleged overpayment in its own contracts, *see, e.g.*, Am. Pet. ¶¶ 164, 198, damages for its citizens' alleged overpayment for diabetes medications, *see, e.g.*, Am. Pet. ¶ 181, and seeks injunctive relief to stop rebating altogether, Am. Pet. ¶¶ 180, 188. But certain conduct for which the State seeks damages and injunctive relief is governed by federal contract, and is carried out by CaremarkPCS Health under the direction of federal agencies. For this reason and others discussed below, CaremarkPCS Health has federal defenses that entitle it to litigate in a federal forum under the controlling federal-officer-removal statute, 28 U.S.C. § 1442(a)(1).

## BACKGROUND

3. The State alleges a sprawling, industrywide "Insulin Pricing Scheme" involving insulin manufacturers Novo Nordisk, Inc. and Sanofi-Aventis U.S. LLC ("Manufacturer Defendants"),[2] and PBMs, including CaremarkPCS Health.

4. PBMs contract with health-plan sponsors, such as public and private employers, to administer prescription drug benefits. Am. Pet. ¶¶ 84-86. Among other things, PBMs develop

---

[2] The Amended Petition also contains allegations regarding Eli Lilly but has not named Eli Lilly as a defendant. *See* Am. Pet. ¶ 5 n.4.

lists of drugs called "formularies," which health-plan clients can adopt to determine whether and to what extent those clients cover the cost of certain medications for their members.  Am. Pet. ¶ 85.  Although PBMs offer standard formulary products to clients, Am. Pet. ¶ 85, their clients decide whether to accept, reject, or customize an offered formulary and set the coverage that applies to their members, *see, e.g.*, Am. Pet. ¶ 106.

5. PBMs play an important role in managing the out-of-pocket cost of pharmaceutical drugs for their health-plan clients.  PBMs negotiate with pharmaceutical manufacturers to obtain rebates that help offset the cost of pharmaceutical drugs.  Those rebates flow back to the PBMs' clients in accordance with the terms of their client contracts, lowering the clients' net drug costs.

6. Accordingly, federal regulators expressly contemplate that PBMs will engage in such negotiations on behalf of their clients, including clients that provide benefits to federal employees who receive insurance under the FEHBA.  The FEHBA "establishes a comprehensive program of health insurance for federal employees."  *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006).  The FEHBA "assigns to [the United States Office of Personnel Management ('OPM')] broad administrative and rulemaking authority over the program," *Coventry Health Care, Inc. v. Nevils*, 581 U.S. 87, 91 (2017) (citing 5 U.S.C. §§ 8901-8913), and authorizes OPM to contract with private carriers for federal employees' health insurance, 5 U.S.C. § 8902(a).

7. OPM requires that participating health insurance plans include prescription drug coverage, but permits FEHBA carriers to contract with PBMs and delegate certain responsibilities to them.  OPM expressly contemplates that contracts between PBMs and FEHBA carriers will include "Manufacturer Payments," which it defines broadly to mean "any and all compensation, financial benefits, or remuneration the PBM receives from a pharmaceutical manufacturer,

3

including but not limited to, discounts; credits; rebates, regardless of how categorized; market share incentives, chargebacks, commissions, and administrative or management fees" as well as "any fees received for sales of utilization data to a pharmaceutical manufacturer." Off. of Personnel Mgmt., *Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers*, at I-18 (2019) ("FEHB Standard Experience-Rated HMO Contract"), *available at* https://www.opm.gov/healthcare-insurance/healthcare/carriers/experience-rated.doc (last visited Apr. 19, 2023). With respect to these payments, OPM imposes various requirements on FEHBA carriers and PBMs:

    a. OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that require the PBM to provide quarterly and annual reports regarding "Manufacturer Payments" that are negotiated or collected from drug manufacturers, including payments "in return for formulary placement and/or access." FEHB Standard Experience-Rated HMO Contract at I-19.

    b. OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that specifically control how PBMs must incorporate rebates into reported pricing: "The PBM agrees to provide pass-through transparent pricing based on the PBM's cost for drugs (as described below) in which the Carrier receives the value of the PBM's negotiated discounts, rebates, credits or other financial benefits." FEHB Standard Experience- Rated HMO Contract at I-18.

    c. OPM contractually requires FEHBA carriers to include in contracts with PBMs a provision by which "[t]he PBM, or any other entity that negotiates and collects Manufacturer Payments allocable to the Carrier agrees to credit to the Carrier either as a price reduction or by cash refund the value [of] all Manufacturer Payments

properly allocated to the Carrier." FEHB Standard Experience-Rated HMO Contract at I-18.

8. Subject to these requirements, rebates negotiated by PBMs and credited to the FEHBA carrier reduce the amounts paid for medicine—including diabetes medicine—by the federal government in connection with FEHBA benefits.

9. FEHBA carriers must also agree to contractual provisions that enable OPM to exercise direct oversight of certain PBM activities, including with respect to Manufacturer Payments:

   a. OPM contractually requires FEHBA carriers to include in contracts with PBMs provisions that specifically require PBMs to provide to OPM upon request "[a]ll PBM contracts with Pharmaceutical Manufacturers." FEHB Standard Experience-Rated HMO Contract at I-19.

   b. OPM is contractually entitled to "review and receive any information and/or documents the Carrier receives from the PBM, including a copy of its contract with the PBM." FEHB Standard Experience-Rated HMO Contract at I-19.

10. Defendant CaremarkPCS Health has contracts with FEHBA carriers pursuant to which CaremarkPCS Health provides delegated pharmacy benefit management services, including with regard to formularies and Manufacturer Payments.

## LOUISIANA'S ALLEGATIONS

11. The State's allegations challenge and seek to enjoin core business practices by which CaremarkPCS Health and other PBMs reduce drug costs for their clients. The Amended Petition alleges that the PBMs' negotiations with manufacturers are not hard-fought, arms-length transactions, but a conspiracy to raise the price of insulin. The Amended Petition claims that the Manufacturer Defendants have artificially inflated list prices of the at-issue drugs, and that

Manufacturer Payments are covertly made in exchange for inclusion on formularies.  Am. Pet. ¶¶ 101-124.

12. Thus, the Amended Petition alleges an industrywide "Insulin Pricing Scheme" in which Manufacturers raise the price of insulin to increase the size of the rebates flowing back to PBMs in exchanged for preferred formulary placement.  The Amended Petition alleges that, as a result, "Louisiana diabetics and payors, including the State," have been forced to suffer exorbitant price increases on diabetes medications.  Am. Pet. ¶ 160.

13. The State's claims in this case broadly challenge core services that CaremarkPCS Health offers to provide to all of its clients, including services governed by FEHBA contracts.  The broad relief Louisiana seeks—including injunctive relief, treble damages, restitution, costs and attorneys' fees, and disgorgement—would impair (if not eliminate) CaremarkPCS Health's ability to deliver those services to clients, including FEHBA carriers.  Am. Pet. ¶¶ 14, 180.

14. As more fully explained below, CaremarkPCS Health has colorable preemption defenses to Louisiana's claims, permitting removal under 28 U.S.C. § 1442(a)(1).

## PROCEDURAL HISTORY

15. On March 14, 2023, the State, purporting to act in its proprietary and *parens patriae* capacities, filed its original Petition for Injunctive Relief and Restitution ("original Petition") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge (the "state court").

16. On March 27, 2023, the State filed its Amended Petition in the state court. R. Doc. 1-2.

17. The original Petition was served on defendant Express Scripts on March 20, 2023. Express Scripts timely and properly removed this action to this Court on April 19, 2023, within 30 days of service of the original Petition upon it.  R. Doc. 1-4.

18. On March 20, 2023, CaremarkPCS Health received service of the original Petition. CaremarkPCS Health files this Supplemental Notice of Removal within 30 days of the service of the original Petition upon it.

19. Louisiana brings its action against two categories of defendants: "Manufacturer Defendants" and "PBM Defendants." Am. Pet. ¶¶ 18, 24.

- The State alleges that the "Manufacturer Defendants" are Novo Nordisk, Inc. and Sanofi-Aventis U.S. LLC;

- The State alleges that the "PBM Defendants" are CaremarkPCS Health, L.L.C. and CVS Health Corporation (collectively, "CVS Caremark"), Express Scripts Administrators, L.L.C., d/b/a Express Scripts, and OptumRx, Inc.

## VENUE

20. Venue is proper in this Court under 28 U.S.C. § 1442(a) because this Court sits in the federal judicial district and division embracing the Nineteenth Judicial District Court for the Parish of East Baton Rouge, the court from which removal is sought. *See* 28 U.S.C. § 1446(a); 28 U.S.C. § 98(b).

## STANDARD OF REVIEW

21. A notice of removal must contain only "a short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)); *see also id.* ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

## GROUNDS FOR REMOVAL

22. The federal-officer-removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1).

7

23. The U.S. Supreme Court has "rejected a 'narrow, grudging interpretation'" of the [federal-officer-removal] statute." *Jefferson Cnty v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). Accordingly, "in contrast to most questions of federal jurisdiction, federal officer removal must be liberally construed." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019) (citation omitted); *see also Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc).

24. In this Circuit, a party removing under the federal-officer-removal statute must show that (i) it is a "person" within the meaning of the statute, (ii) it acted "pursuant to a federal officer's directions," (iii) the charged conduct is connected with or related to an act pursuant to a federal officer's directions, and (iv) it asserts a "colorable federal defense." *Latiolais*, 951 F.3d at 296. CaremarkPCS Health satisfies all four elements here.

### i. The Removing Defendant Is a "Person."

25. CaremarkPCS Health is a "person" under the federal-officer-removal statute because corporations and limited liability companies qualify as "persons" under § 1442(a)(1). *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (corporations), *overruled on other grounds by Latiolais*, 951 F.3d at 296; *St. Bernard Port, Harbor & Terminal Dist. v. Violet Dock Port, Inc.*, 809 F. Supp. 2d 524, 530 (E.D. La. 2011) (limited liability companies).

### ii. Defendant Acted "Pursuant to a Federal Officer's Directions."

26. Private entities "act[] under" a federal officer when involved in "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) (internal quotation marks and citations omitted). "The words 'acting under' are broad, and . . . must be 'liberally construed.'" *Watson v. Phillip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). To establish this element, a party "need only show that it 'help[ed] the Government

8

to produce an item that it needs . . . . [or] perform[ed] a job that, in the absence of a contract with a private firm, the Government itself would have to perform.'" *Jackson v. Avondale Indus. Inc.*, 469 F. Supp. 3d 689, 707 (E.D. La. 2020) (quoting *Watson*, 551 U.S. at 154); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015); *Elie v. Ameron Int'l Corp.*, 2020 WL 2554317, at *3 (E.D. La., May 20, 2020). "Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy this part of § 1442." *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017), *overruled on other grounds by Latiolais*, 951 F.3d at 296 & n.9.

27. CaremarkPCS Health easily satisfies this requirement. "Under the FEHBA, OPM is responsible for contracting with private insurance carriers [FEHBA carriers] to provide health benefits plans to federal employees." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co. (St. Charles I)*, 935 F.3d 352, 356 (5th Cir. 2021). As set out above, CaremarkPCS Health helps administer these benefits plans for federal employees pursuant to contracts with FEHBA carriers.[3] The OPM oversees that administration, determining everything from how CaremarkPCS Health must define, report, and identify Manufacturer Payments; to how it must incorporate rebates into reported pricing; to the percentage of rebates it must pass on to federal clients (requiring 100% pass through); to the information it must provide to OPM upon request. *Supra* at ¶¶ 7, 9. In carrying out its duties pursuant to FEHBA carrier contracts, CaremarkPCS Health therefore is "subject to OPM oversight . . . submits to OPM's regulatory requirements, and ultimately answers to federal officers." *St. Charles I*, 935 F.3d at 356.

28. The Fifth Circuit, along with the Eighth, Ninth, and Eleventh, has held that FEHBA carriers meet the requirements of section 1442 in their capacity as "administrator[s] of health care

---

[3] CaremarkPCS Health's FEHBA carrier clients include the Blue Cross and Blue Shield Federal Employee Program ("FEP"), the Government Employees Health Association ("GEHA"), the National Association of Letter Carriers ("NALC"), and the Mail Handlers Benefit Plan ("MHBP").

benefits for federal employees." *Id.*; *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1247 (9th Cir. 2017); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1235 (8th Cir. 2012); *Anesthesiology Assocs. Of Tallahassee v. Blue Cross Blue Shield of Fla., Inc.*, 2005 WL 6717869, at *2 (11th Cir. 2005). By performing PBM services on behalf of FEHBA carriers, CaremarkPCS Health likewise helps administer federal benefits on behalf of federal employers under OPM's direction. *See Elie*, 2020 WL 2554317, at *3 (holding that in the absence of a contract to perform a service, the government would have had to perform that service); *Wilde*, 616 Fed. App'x. at 713 (same). Indeed, OPM explicitly "contemplated" that FEHBA carriers would utilize PBMs and further "made [PBMs] directly accountable to the federal government." *Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy*, 996 F.3d 243, 253 (4th Cir. 2021) (finding PBM subcontractor "acting under" direction of federal officer); *see Cal. Spine & Neurosurgery Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, 548 F. Supp. 3d 934, 941-42 (N.D. Cal. 2021). Accordingly, CaremarkPCS Health satisfies this requirement.

### iii. Defendant's Alleged Conduct Is Connected With or Related to an Act Pursuant to a Federal Officer's Directions.

29. In 2011, Congress amended § 1442(a)(1) to provide that a suit need only be "for or *relating to* any act under color of [United States] office." 28 U.S.C. 1442(a)(1) (2011) (emphasis added). The statute's low hurdle now requires only that the alleged conduct be "'connected or associated with' (or 'related to') a federal directive." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021) (quoting *Latiolais*, 951 F.3d at 291, 296). A defendant no longer needs to show a "causal nexus" between the alleged conduct and acts under color of federal office. *See id*. at 452.

30. The Manufacturer Payments Louisiana addresses in its Amended Petition are encompassed by OPM's definition of "Manufacturer Payments." *See supra* at ¶ 7; Am. Pet. ¶ 109.

10

31. The State categorically challenges CaremarkPCS Health's practices with regard to formularies and Manufacturer Payments. Because the insulin sales in Louisiana necessarily include sales under FEHBA contracts, the charged conduct relates to acts made under a federal directive. As explained above, CaremarkPCS Health's practices with regard to formularies and Manufacturer Payments in connections with FEHBA plans are subject to a range of contractual requirements imposed by OPM, including the requirement that Manufacturer Payments allocable to the carrier be credited against amounts paid by the federal government in connection with FEHBA benefits.

### iv. Defendant Has Colorable Federal Defenses.

32. For federal-officer-removal purposes, a defense only needs to be colorable. *Latiolais*, 951 F.3d at 296 (quoting *Acker*, 527 U.S. at 431). "Colorable" is a low bar; a defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id.* at 297 (quoting *Zeringue*, 846 F.3d at 790).

33. Here, CaremarkPCS Health has colorable preemption defenses.

34. FEHBA provides that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payment with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). As explained above, contracts with OPM contain terms that govern the PBMs' obligations as they relate to formularies and rebates.

35. Here, the State challenges precisely what the contractual terms imposed by OPM authorize: PBMs' negotiating for and collecting Manufacturer Payments. Am. Pet. ¶ 110 (challenging as illegal "Manufacturer Payments," which "include all payments or financial

11

benefits of any kind conferred by the Manufacturer Defendants to the PBM Defendants or their related entities, either directly via contract or directly via manufacturer-controlled intermediaries, and include rebates, administrative fees, inflation fees, pharmacy supplemental discounts, volume discounts, price or margin guarantees, and any other form of consideration exchanged"); Am. Pet. ¶ 133 (contending that statements by PBM Defendants are "false" because "reducing or eliminating Manufacturer Payments could result in lower prices and reduced out-of-pocket expenditures").

36. Moreover, as explained, the contractual terms imposed by OPM require PBMs to disclose Manufacturer Payments as reductions to the costs associated with prescription drugs, including insulin. The State's claims in this case fundamentally challenge whether PBMs are permitted to make any representation that Manufacturer Payments reduce payors' costs. Am. Pet. ¶ 114 (characterizing as "patently false" statements by PBMs that negotiated Manufacturer Payments "drive down prices for diabetes medications").

37. As set forth above, the contractual terms imposed by OPM authorize Manufacturer Payments in connection with formulary placement and/or access. The State's claims in this case fundamentally challenge the propriety of formularies developed by PBMs, and whether PBMs are permitted to consider Manufacturer Payments in connection therewith. Am. Pet. ¶¶ 106, 110 (alleging that "formularies are at the center of the Insulin Pricing Scheme" and challenging Manufacturer Payments as "*quid pro quo* for formulary inclusion on the PBM Defendants' standard offerings").

## SUPPLEMENTAL JURISDICTION

38. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the claims asserted by the State regarding all non-FEHBA beneficiaries against the PBM

Defendants. The State's claims regarding all non-FEHBA beneficiaries against the PBM Defendants are "other claims that are so related to" its claims regarding FEHBA that "they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). In addition, this Court has supplemental jurisdiction over the State's claims against the Manufacturer Defendants. The State's claims regarding all non-FEHBA beneficiaries against the Manufacturer Defendants are also "other claims that are so related to" its claims regarding FEHBA that "they form part of the same case or controversy." *See* 28 U.S.C. § 1367(a). Fundamentally, the State alleges that the PBM Defendants and Manufacturer Defendants engaged in a civil conspiracy, Am. Pet. ¶¶ 181-182, "acted in concert," Am. Pet. ¶ 196, and "coordinate[d]," Am. Pet. ¶ 124, to engage in and maintain the alleged scheme. As the State portrays it, a "tangled web . . . gave rise to the [alleged] scheme," Am. Pet. ¶ 121, and the Court should therefore exercise supplemental jurisdiction over the entire Action.

## ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

### A. The Notice of Removal Is Timely.

39. This Supplemental Notice of Removal is timely. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

### B. Consent Is Not Required.

40. The federal-officer-removal statute does not require other Defendants to consent to removal. *See Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965) ("[I]t is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court."); *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir. 1980) ("[W]hen a federal officer exercises his prerogative under 28 U.S.C. § 1442(a)(1) to remove any 'civil action' commenced against him in state court, the entire case against all defendants, federal

and non-federal, is removed to federal court regardless of the wishes of his co-defendants." (citing *Fowler*, 343 F.2d at 152)).

### C. Other Requirements.

41. CaremarkPCS Health files with this Supplemental Notice of Removal, as Exhibit A hereto, a copy of all process, pleadings, and orders served on it.

42. Contemporaneously herewith, CaremarkPCS Health is filing with the state court Clerk this Supplemental Notice of Removal. Caremark PCS Health is also providing written notice of this Supplemental Notice of Removal to the State, through its attorneys of record.

43. CaremarkPCS Health will ensure that a copy of the entire state court record is filed herein promptly and as directed by the Court.

### D. Non-Waiver of Defenses.

44. By filing this Supplemental Notice of Removal, CaremarkPCS Health reserves and does not waive any procedural or substantive defense available to it, including, without limitation, lack of subject-matter jurisdiction of the state court, lack of personal jurisdiction, improper venue, insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted. *See* 5C FED. PRAC. & PROC. CIV. 1395 (3d ed.) ("A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections . . . . [I]nasmuch as the jurisdiction of a removed action essentially is derivative, any defect in jurisdiction or process present in the state suit may be asserted in the district court following removal." (footnotes omitted)); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 449 (1943) ("[W]here a state court lacks jurisdiction of the subject matter or of the parties, the federal District Court acquires none on a removal of the case. That is true even where the federal court would have jurisdiction if the suit were brought there." (citations omitted)); *PT United Can Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998) ("A party who removes an action

from state to federal court does not, in so doing, waive the defense of improper venue as to the underlying state court action."); *Garden Homes, Inc. v. Mason*, 238 F.2d 651, 653 (1st Cir. 1956) ("Effective service is, of course, the keystone to a court's personal jurisdiction over the defendant, and it is clear that this defense is not waived upon removal of an action from the state court to a federal court." (citations omitted)); *Moss v. Atl. Coast Line R.R. Co.*, 157 F.2d 1005, 1006 (2d Cir. 1946) ("[A] defendant is not precluded from having the suit dismissed because its motion to remove was in any sense the waiver of a right, for it has waived nothing by taking that action . . . .").

WHEREFORE, Defendant CaremarkPCS Health, L.L.C. removes this Action to this Court for further proceedings according to law.

This 19th day of April, 2023          Respectfully submitted,

                                                 /s/ James A. Brown
                                                 James A. Brown (Bar # 14101)
                                                 Melanie Derefinko (Bar # 37658)
                                                 Courtney Harper Turkington (Bar # 38255)
                                                 LISKOW & LEWIS
                                                 701 Poydras Street, Suite 5000
                                                 New Orleans, Louisiana 70139-5099
                                                 Telephone: (504) 581-7979
                                                 Facsimile: (504) 556-4108
                                                 jabrown@liskow.com
                                                 mderefinko@liskow.com
                                                 chturkington@liskow.com

                                                 ***Attorneys for CaremarkPCS Health, L.L.C. and CVS Health Corp.***

OF COUNSEL:

Enu Mainigi
Craig Singer
R. Kennon Poteat III
A. Joshua Podoll
Daniel Dockery
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue S.W. Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com
ddockery@wc.com

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of April, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and I further certify that, on the same day, I mailed, faxed, or e-mailed the foregoing document with exhibits and notice of electronic filing to the attorneys of record for the parties.

/s/ James A. Brown

**Error! Unknown document property name.**