# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | * | **No. 3:23-cv-00302-BAJ-SDJ** |
| | * | |
| **VERSUS** | * | **JUDGE: BRIAN A. JACKSON** |
| | * | |
| **SANOFI-AVENTIS U.S. LLC** *et al.* | * | **MAG. JUDGE: SCOTT D. JOHNSON** |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### EXPRESS SCRIPTS ADMINISTRATORS, LLC'S OPPOSITION TO
### <u>STATE OF LOUISIANA'S MOTION TO REMAND</u>

1

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 3

    I.      A Notice of Removal Does Not Require Admissible Evidence. .......................... 3

    II.    State Sovereign Immunity Does Not Preclude Federal Officer Removal. ............ 4

    III.   Express Scripts Has Shown Federal Officer Removal is Appropriate. ................ 7

        A.    Express Scripts Acted Pursuant to the DoD's Directions. ........................ 8

        B.    Express Scripts' Performance Under the Contract Relates to the State's Claims. ........................................................................................ 11

        C.    Express Scripts Has Asserted Colorable Federal Defenses. .................... 15

    IV.   The Court Should Not Cause Any Order of Remand to be Mailed Until Defendants Have an Opportunity to Notice an Appeal. ..................................... 19

CONCLUSION .................................................................................................... 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alden v. Maine*,
   527 U.S. 706 (1999)...........................................................................................................5

*Ames v. Kansas*,
   111 U.S. 449 (1884)...........................................................................................................5

*Arana v. Ochsner Health Plan*,
   338 F.3d 433 (5th Cir. 2003) ......................................................................................16, 17

*Arizona v. Manypenny*,
   451 U.S. 232 (1981)...........................................................................................................3

*Bank of Am., N.A. v. El Paso Natural Gas Co.*,
   2017 WL 9478457 (W.D. Okla. Jan. 12, 2017)...............................................................20

*Bennett v. MIS Corp.*,
   607 F.3d 1076 (6th Cir. 2010) .........................................................................................15

*Boyle v. United Techs. Corp.*,
   487 U.S. 500 (1988)....................................................................................................15, 16

*Cal. Spine & Neurosurgey Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*,
   548 F. Supp. 3d 934 (N.D. Cal. 2021) .............................................................................19

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*,
   536 F.3d 418 (5th Cir. 2008) .............................................................................................5

*Carley v. Wheeled Coach*,
   991 F.2d 1117 (3d Cir. 1993)...........................................................................................15

*City of Walker v. Louisiana*,
   877 F.3d 563 (5th Cir. 2017) .............................................................................................3

*Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*,
   996 F.3d 243 (4th Cir. 2021) .............................................................................1, 9, 10, 11

*Cohens v. State of Virginia*,
   19 U.S. (6 Wheat) 264 (1821)............................................................................................4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014).....................................................................................................1, 3, 4

ii

*Durham v. Lockheed Martin Corp.*,
    445 F.3d 1247 (9th Cir. 2006) ...................................................................................3

*Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*,
    359 F.3d 1237 (10th Cir. 2004) .................................................................................6

*In re Flonase Antitrust Litigation*,
    879 F.3d 61 (3d Cir. 2017)........................................................................................6

*Goncalves By & Through Goncalves v. Rady Children's Hosp. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) .................................................................................12

*Guillory v. Ree's Cont. Serv., Inc.*,
    872 F. Supp. 344 (S.D. Miss. 1994).........................................................................15

*Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*,
    625 F.2d 22 (5th Cir. 1980) ..................................................................................4, 5

*Hudgens v. Bell Helicopters/Textron*,
    328 F.3d 1329 (11th Cir. 2003) ...............................................................................15

*Indiana State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal
    Care Grp., Inc.*,
    2005 WL 1237598 (M.D. Tenn. Sept. 12, 2005) ....................................................19

*Jacks v. Meridian Res. Co., LLC*,
    701 F.3d 1224 (8th Cir. 2012) ...........................................................................15, 16

*Jones v. Cain*,
    600 F.3d 527 (5th Cir. 2010) ...................................................................................18

*In re Katrina Canal Breaches Litig.*,
    620 F.3d 455 (5th Cir. 2010) .............................................................................15, 17

*In re Katrina Canal Litig. Breaches*,
    524 F.3d 700 (5th Cir. 2008) .....................................................................................7

*Kennedy v. Cincinnati Ins. Co.*,
    2017 WL 192396 (E.D. La. Jan. 18, 2017)................................................................4

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) (en banc) .................................................7, 12, 14, 15

*California ex rel. Lockyer v. Dynegy, Inc.*,
    375 F.3d 831 (9th Cir. 2004) .................................................................................5, 7

*W. Virginia ex rel. McGraw v. Comcast Corp.*,
    705 F. Supp. 2d 441 (E.D. Pa. 2010) ........................................................................5

*Mesa v. California,*
    489 U.S. 121 (1989)................................................................................14

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.,*
    488 F.3d 112 (2d Cir. 2007)................................................................5, 7

*Miley v. Ard,*
    2018 WL 6003869 (M.D. La. Nov. 15, 2018) .........................................18

*Mitchell v. Advanced HCS, L.L.C.,*
    28 F.4th 580 (5th Cir. 2022) ..................................................................8

*Moore v. Abbot Laboratories, Inc.,*
    900 F. Supp. 26 (S.D. Miss. 1995)..........................................................7

*Northrop Grumman Tech. Servs., Inc. v. Dyncorp Int'l LLC,*
    2016 WL 3346349 (E.D. Va. June 16, 2016) .........................................19

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010,*
    747 F. Supp. 2d 704 (E.D. La. 2010) ......................................................7

*Plaquemines Par. v. Chevron USA, Inc.,*
    2022 WL 9914869 (5th Cir. Oct. 17, 2022)........................................4, 10

*Port of Corpus Christi Auth. of Nueces Cnty., Tex. v. Port of Corpus Christi L.P.,*
    57 F.4th 432 (5th Cir. 2023) ..................................................................8

*Regents of the Univ. of Cal. v. Eli Lilly & Co.,*
    119 F.3d 1559 (Fed. Cir. 1997)..............................................................6

*St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.,*
    990 F.3d 447 (5th Cir. 2021) ......................................................8, 10, 12

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.,*
    2022 WL 837495 (N.D. Tex. Mar. 21, 2022) ........................................10

*Watson v. Philip Morris Companies, Inc.,*
    551 U.S. 142 (2007).........................................................................8, 11

*Yearsley v W.A. Ross Constr. Co.,*
    309 U.S. 18 (1940)...............................................................................15

## Statutes

10 U.S.C. § 1103(a) ...................................................................................16

28 U.S.C. § 1441(c) ...................................................................................19

28 U.S.C. § 1442(a) ............................................................................ *passim*

28 U.S.C. § 1442(a)(1) .................................................................................... *passim*

28 U.S.C. § 1446(a) .................................................................................................3

28 U.S.C. § 1447(c) ...............................................................................................19

28 U.S.C. § 1447(d) ...............................................................................................19

**Other Authorities**

32 C.F.R. § 199.17(a)(7) ........................................................................................16

14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3733 ......................................................................................................................4

5th Cir. R. 47.5.4 .....................................................................................................4

U.S. CONST. Amend. XI ...........................................................................................4

## INTRODUCTION

The State of Louisiana ("Louisiana") pursues claims based on a theory that Pharmacy Benefit Managers ("PBMs") like Express Scripts Administrators, LLC d/b/a Express Scripts ("Express Scripts") participated in a broad "pricing scheme" with manufacturers of insulin products and allegedly worked to drive up the insulin prices paid by *all* Louisiana residents. Express Scripts, through its affiliates, currently contracts with the United States Department of Defense ("DoD") to provide pharmacy benefit management services to members of the DoD's TRICARE health care program across the country, including in Louisiana for insulin products. The TRICARE engagement is no ordinary government contract. As the Fourth Circuit recently put it, the PBM is "essentially acting as the statutorily authorized alter ego of the federal government" when performing under the agreement with the DoD. *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 253 (4th Cir. 2021) (reversing order remanding case).

Given this unique contractual relationship, Express Scripts removed this action under 28 U.S.C. § 1442(a) as an agent of a federal officer acting under color of law. Louisiana's motion for remand (Dkt. 24) misses the mark in multiple ways.

*First*, the State's theory that Express Scripts must produce *evidence* instead of allegations in a notice of removal is contrary to the recent opinion of the Supreme Court. Less than a decade ago, the Supreme Court confirmed that the liberal rules of pleadings apply to notices of removal, and that a removing party must only include "plausible allegation[s]" to support removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

*Second*, Louisiana's argument that the Eleventh Amendment precludes removal is unprecedented and without any legal support. Sovereign immunity protects states from being a *defendant* in federal court, but the law has been crystal clear—from the Marshall Court to

1

present—that sovereign immunity does not apply when the state is a plaintiff and a defendant invokes a federal issue in removal.

*Third,* Louisiana has failed to show that Express Scripts did not properly allege that the action can be removed under Section 1442(a). Express Scripts met all of the statutory elements for removal: Express Scripts is "acting under" a federal officer when it performs under the TRICARE contract, its performance under the contract "relates to" or is "connected" to the conduct the State seeks to prohibit, and Express Scripts can assert the colorable federal defenses of government contractor immunity and preemption in response to the State's claims. The Court should deny Louisiana's motion to remand as more fully explained below.

## **BACKGROUND**

On March 14, 2023, Louisiana filed suit against several defendants, including Express Scripts, in the 19th Judicial District Court in East Baton Rouge Parish, alleging violations of the Louisiana Unfair Trade Practices Act and Medical Assistance Programs Integrity Act and a claim for unjust enrichment. Dkt. 1-4. Shortly thereafter, Louisiana filed its operative First Amended Complaint, which added a claim for violations of the Louisiana Monopolies Act. Dkt 1-2.

On April 19, 2023, Express Scripts timely removed the matter to this Court pursuant to 28 U.S.C. § 1442(a) based on Louisiana's allegations implicating Express Scripts' obligations to the DoD pursuant to the TRICARE statute and contract with DoD. Dkt. 1 ("NoR"). Express Scripts attached a copy of the contract governing its performance with the DoD (Dkt. 1-2), and explained how Louisiana's claims conflict with Express Scripts' obligations to perform under the contract with the DoD in a way that implicates federal defenses. On May 19, 2023, Louisiana moved to remand the dispute to state court, (Dkt. 24), and submitted a 40-page memorandum in support of its motion (Dkt 24-2) ("Pl. Mem.").

## ARGUMENT

Under 28 U.S.C. § 1442(a)(1), any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" is authorized to remove a case to federal court. Although Express Scripts as the removing party bears the burden of demonstrating that the Court has subject-matter jurisdiction, *City of Walker v. Louisiana*, 877 F.3d 563, 569 (5th Cir. 2017), the federal officer removal statute stands apart from other removal statutes. Driven by the purpose of ensuring maximum protections for federal officers and their agents, the Supreme Court has instructed lower courts that "the right of removal is absolute for conduct performed under color of federal office" and that the "the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (internal citations omitted). Thus, when a defendant invokes federal officer removal, the normal presumption against removal does not apply. *See, e.g.*, *City of Walker*, 877 F.3d at 569 ("we review the district court's order on this point 'without a thumb on the remand side of the scale.'") (citation omitted). On the contrary, courts must "interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). Express Scripts has demonstrated removal is appropriate, and the State's arguments seeking remand are unavailing.

## I.    A Notice of Removal Does Not Require Admissible Evidence.

The State repeatedly tries to fault Express Scripts for not proffering admissible evidence in its notice of removal. But Express Scripts does not bear that evidentiary burden. A notice of removal must contain only "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). As the Supreme Court recognized, Section 1446(a) "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart*, 574 U.S. at 87. Thus, courts must "apply the same liberal rules [to removal allegations] that are applied to other

3

matters of pleading." *Id.* (citing H.R. Rep. No. 100-889, p.71 (1988)).  In this way, a notice of removal only needs to include "plausible allegation[s]" to support removal.  *Id.* at 89; *see also Kennedy v. Cincinnati Ins. Co.*, 2017 WL 192396, at *4 (E.D. La. Jan. 18, 2017) (notice of removal "does not require evidentiary support"); 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3733 (Rev. 4th ed.) (notice of removal must only "contain enough information so that the district judge can determine whether jurisdiction exists").

The State's claim that a defendant must proffer admissible evidence within 30 days of service of the complaint lacks any legal support.  Despite being a central theme in its brief, the State can muster only a *cf.* cite to an unpublished *per curiam* decision from the Fifth Circuit, *Plaquemines Par. v. Chevron USA, Inc.*, 2022 WL 9914869, at *2 (5th Cir. Oct. 17, 2022) to support its theory.  Pl. Mem. 11–12.  Such an unpublished decision is "not precedent."  5th Cir. R. 47.5.4.  And the decision does not address the evidentiary burden applicable to a notice of removal in any event.  Express Scripts' allegations, supported by the contract at issue and other documentary support, is more than sufficient to support removal.

## II.    State Sovereign Immunity Does Not Preclude Federal Officer Removal.

"[T]he eleventh amendment is inapplicable where a state is a plaintiff."  *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22, 24 n.6 (5th Cir. 1980).  Under the Eleventh Amendment "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against one of the United States* by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI (emphasis added).  By its plain language, the Eleventh Amendment only precludes federal court jurisdiction over suits brought *against* a state.  The Marshall Court acknowledged this truth shortly after the Eleventh Amendment's adoption.  *Cohens v. State of Virginia*, 19 U.S. (6 Wheat) 264, 407 (1821) ("The amendment, therefore, extended to suits commenced or prosecuted by

4

individuals, but not to those brought by States.").  And the Supreme Court expressly approved removal in actions brought by a state near the end of the 19th century.  *Ames v. Kansas*, 111 U.S. 449, 462 (1884) ("a suit brought by a State in one of its own courts, against a corporation amendable to its own process . . . can be removed to the circuit court [now the U.S. District Court] of the United States . . . .").  And the Supreme Court more recently has recognized that state sovereignty protects only "immunity *from suit*."  *Alden v. Maine*, 527 U.S. 706, 713 (1999) (emphasis added); *see id.* at 730 ("[T]he constitutional principle of sovereign immunity does pose a bar to federal jurisdiction over suits against nonconsenting States.")

The Fifth Circuit has confirmed this reading, acknowledging that "[o]f course, the eleventh amendment is inapplicable where a state is a plaintiff."  *Huber, Hunt & Nichols, Inc.*, 625 F.2d at 24 n.6.  More recently, in another *parens patriae* action brought by the State of Louisiana, the Fifth Circuit acknowledged that "a number of circuit courts have interpreted the Eleventh Amendment as only applicable when a state is a defendant" and that such precedent is "consistent with Supreme Court precedent."  *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 431 n.12 (5th Cir. 2008), *abrogated in part on other grounds by Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014).[1]  The *Caldwell* panel is correct: circuit courts have indeed interpreted the Eleventh Amendment as applying only to actions in which a State is a not a plaintiff.  *See, e.g., In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) ("[S]overeign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court"); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 847 (9th Cir. 2004) ("[H]istory gives little indication that sovereign immunity was ever intended to protect

---

[1] District courts also recognize that the *parens patriae* nature of an action does not preclude removal of an action brought by a state. *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 455 (E.D. Pa. 2010) (rejecting as "unfounded" Eleventh Amendment concerns in removed cases brought by West Virginia on a *parens patriae* basis).

*plaintiff* states."); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1240 (10th Cir. 2004) ("Consistent with the constitutional text, relevant pronouncements of the Supreme Court, and the vast majority of district court cases directly on point, we hold that the State may not assert its Eleventh Amendment immunity to preclude defendants' removal of the tort action it brought against them in its own courts."); *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997) ("the Eleventh Amendment applies to suits 'against' a state, not suits by a state").

Despite this overwhelming binding precedent, Louisiana presses sovereign immunity as its lead argument in favor of remand, principally relying on the out-of-circuit decision of *In re Flonase Antitrust Litigation*, 879 F.3d 61 (3d Cir. 2017). *See* Pl. Mem. 5–11. The *Flonase* court merely held that sovereign immunity barred a federal court in a class action settlement from enjoining Louisiana from bringing suit as an absent class member—not a "plaintiff" as the State claims (Pl. Mem. at 11 n.13). Sovereign immunity applied because the approved settlement agreement "permanently enjoined" Louisiana, an absent class member, from bringing any of the released claims. *In re Flonase*, 879 F.3d at 66. This enjoining of the absent class member was a suit "*against the sovereign*" because, in part, "the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Id.* at 66 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 n.11 (1984)). In so ruling the *Flonase* court expressly distinguished authority that the Eleventh Amendment does not preclude removal of an action brought by the state because removal alone did not involve a party seeking "legal or equitable remedies ***against*** the State." 879 F.3d at 68 (citing *Dynegy*, 375 F.3d at 845). *Flonase* does not

help Louisiana, and the State cannot identify any way in which removal alone would involve any Defendant seeking any remedy against the State.[2]

The State also points to *Moore v. Abbot Laboratories, Inc.*, 900 F. Supp. 26, 30 (S.D. Miss. 1995) to support the idea that removal can violate sovereign immunity. But as Judge Barbier appreciated, *Moore* is "unpersuasive" because "the Fifth Circuit has clearly indicated that it does not support such a broad interpretation of the Eleventh Amendment." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 747 F. Supp. 2d 704, 710 (E.D. La. 2010). And both the Second and Ninth Circuits expressly rejected the decision as unpersuasive. *MTBE*, 488 F.3d at 120 (rejecting decision because, among other things, it "ignored the text of the Eleventh Amendment"); *Dynegy*, 375 F.3d at 849 n.15 (criticizing the opinion as "unpersuasive"). This Court should decline to follow it as well.

## III.   Express Scripts Has Shown Federal Officer Removal is Appropriate.

A party removing under the federal-officer-removal statute must show "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc). The State disputes that Express Scripts has acted "pursuant to a federal officer's directions" (prong 3), that the conduct alleged in its complaint is

---

[2] The State in a footnote briefly discusses *In re Katrina Canal Litig. Breaches*, 524 F.3d 700 (5th Cir. 2008). In that case, the Fifth Circuit discussed in detail the case law that has "focused on the importance of protecting states as defendants, as did the Founders' debates over Article III." *Id.* at 709. But the panel also recognized, in dicta, that perhaps removal "on diversity grounds under CAFA, rather than federal question jurisdiction" may create a constitutional concern. *Id.* at 711. Such dicta is of no moment here. Express Scripts removed this action on federal officer grounds, a species of "federal question" jurisdiction—a point Louisiana emphasizes repeatedly. *See* Pl. Mem. 27 ("it is the raising of a federal question in the officer's removal petition that constitutes the federal law under which the action against the federal officer arises for Art. III purposes." (quoting *Mesa v. California*, 489 U.S. 121, 136 (1989)) (bold emphasis removed)).

"connected or associated with" Express Scripts' actions pursuant to a federal officer's directions (prong 4), and that Express Scripts has asserted a colorable federal defense (prong 1). Express Scripts responds to those arguments in the same order.

### A.   Express Scripts Acted Pursuant to the DoD's Directions.

Federal officer removal is available to a federal officer and "any person acting under that officer." 42 U.S.C. § 1442(a)(1). The inquiry into whether a removing entity acted "pursuant to a federal officer's directions" (prong 3) asks whether the entity is "acting under" a federal officer. *See e.g., Port of Corpus Christi Auth. of Nueces Cnty., Tex. v. Port of Corpus Christi L.P.*, 57 F.4th 432, 436 (5th Cir. 2023); *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 589 (5th Cir. 2022). Private entities "act[] under" a federal officer when they are involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007) (emphasis in original). The "acting under" inquiry (prong 3) is distinct from whether the conduct at issue is "connected or associated with" (prong 4) the actions pursuant to a federal officer's directions. *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.* ("*St. Charles II*"), 990 F.3d 447, 454 (5th Cir. 2021).

Express Scripts demonstrated that it is "acting under" the DoD's directions when it performs under the TRICARE contract. Express Scripts provides PBM services and administers the TRICARE Mail Order Pharmacy ("TMOP"), the DoD's mail-order pharmacy program, under the detailed requirements of the contract and lengthy Statement of Work issued by the DOD. The TRICARE Contract requires the use of a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products." NoR Ex. B at § C.1.4. The DoD formulary is "managed by the DoD Pharmacy and Therapeutics P&T Committee." *Id.* When it serves as a pharmacy benefit manager administering benefits at retail pharmacies, Express Scripts serves in a function of "fiscal intermediary on behalf of DoD to pay for all authorized pharmaceutical and

supplies dispensed for eligible beneficiaries at retail pharmacies." *Id.* at § C.1.6.  Or, as the TRICARE Contract puts it, "the Government will be acquiring covered drugs with Government funds for use by the Government" when a TRICARE prescription is dispensed at retail network pharmacies. *Id.*

The Fourth Circuit looked at this exact contract and concluded that Express Scripts' operating of TMOP represents the "'unusually close [relationship] involving detailed regulation, monitoring, or supervision' sufficient to satisfy the 'acting under' requirement." *Arlington Cnty.,* 996 F.3d at 253 (4th Cir. 2021) (quoting *Watson*, 551 U.S. at 153).  The Fourth Circuit went on to conclude that Express Scripts is "essentially acting as the statutorily authorized *alter ego* of the federal government" when it operates TMOP.  *Id.*

The Fourth Circuit has it right: Express Scripts is "acting under" a federal officer when it operates the mail-order program under TMOP.  And the same "unusually close" relationship applies to Express Scripts equally—if not more so—when it provides PBM services for TRICARE beneficiaries at retail pharmacies.  Express Scripts processes "all claims for pharmaceutical agents and diabetic supplies" made by TRICARE beneficiaries from licensed pharmacies in all 50 United States.  NoR Ex. B at § C.6.3.1.  And Express Scripts must maintain a retail pharmacy network where all TRICARE beneficiaries are within quick access to an in-network pharmacy.  *See id.* at § C.6.5.1.  But when it comes to handling the claims, the contract relegates Express Scripts to the role of "fiscal intermediary" using the DoD's money when it reimburses retail pharmacies.  *See* NoR Ex. B at § C.1.6.

The State's principal response is to claim that a different Express Scripts entity—Express Scripts, Inc. ("ESI")—directly contracted with the government, meaning Express Scripts is not "acting under" a federal officer even if other Express Scripts entities are.  But one of the key issues

in *Arlington County* was whether an affiliate subcontractor of ESI could still be "acting under" a federal officer for federal officer removal, and the Fourth Circuit emphatically said yes: "the absence of a *direct contractual relationship* with the federal government is *not* a bar to removing an action under § 1442(a)(1)." *Arlington Cnty.*, 996 F.3d at 254 (emphasis in original).  Courts in this circuit also have not required privity of contract for a federal officer removal.  *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2022 WL 837495, at *3 (N.D. Tex. Mar. 21, 2022) (subcontractor can be "acting under" a federal officer for removal purposes because "the federal officer removal statute imposes no requirement that such a contract exist" and subcontractors can be responsible "for performing actions that the government would otherwise need to perform itself"), *aff'd* 2023 WL 2573914 (5th Cir. Mar. 20, 2023); *see also Plaquemines,* 2022 WL 9914869, at *3 (citing *Arlington County* to assert that subcontractors must show they were "subject to the federal government's guidance and control").[3]  In short, the critical inquiry "examines the *relationship* between the removing party and the relevant federal officer" rather than the particular name on the contract.  *St. Charles II*, 990 F.3d at 455.

A look at that relationship shows that Express Scripts and ESI were both "acting under" a federal officer. The DoD fully expected ESI to use subcontractors to perform the work required under the TRICARE contract.  *See, e.g.*, NoR Ex. B at § C.14.10.1 ("The Contractor shall ensure that all staff including subcontractors and consultants that have access to PII or PHI under this contract comply with the training requirements …."); § C.16.1.1. ("The Contractor shall ensure that its staff and subcontractors (if any) are thoroughly trained and knowledgeable regarding the requirements of this contract").  And in the Instructions to the Request for Proposal for the TRICARE contract, the DoD expressly envisioned that the contractor would use its own affiliates.

---

[3] In two footnotes (Pl. Mem. at nn. 21, 27), the State criticizes *Arlington County* as an "outlier" but fails to identify a single decision disagreeing with the legal standards it utilized or its ultimate conclusions.

For conflict of interest purposes, the RFP defined "Offeror" as "the offeror, its subsidiaries, *affiliates*, partners, marketing consultants, as defined by FAR Subpart 9.501, or any of its successors or assignees." Ex. A at § L.2.2 (emphasis added).[4]  In fact, ESI subcontracted portions of its contracts out to its affiliates.  As shown in the *Arlington County* case, for operating the mail-order pharmacy for TRICARE, ESI subcontracted with its mail-order pharmacy affiliates. NoR ¶ 4; *accord Arlington Cnty.*, 996 F.3d at 249.

ESI also subcontracts with Express Scripts for certain services.  Express Scripts is the "affiliate licensed to perform third-party administrator and pharmacy benefit management services on ESI's behalf for TRICARE beneficiaries in Louisiana." NoR ¶ 3.[5]   In this way, "the obligations the DoD imposes on ESI apply equally to Express Scripts for TRICARE beneficiaries in Louisiana."  *Id.*  For TRICARE beneficiaries in Louisiana, the obligation to cause the collection of co-payments mandated by the DoD and federal law falls on Express Scripts.  As such, Express Scripts, like ESI and its mail-order affiliates are "acting under" DoD federal officers when it supports TRICARE.[6]

### B. Express Scripts' Performance Under the Contract Relates to the State's Claims.

Federal officer removal is available to a person "acting under" a federal officer "*relating to* any act under color of such office or on account of any right."  42 U.S.C. § 1442(a) (emphasis

---

[4] The exhibit is attached to the accompanying declaration of Patrick Harvey.

[5] Under Louisiana law, a third-party administrator "collects charges or premiums from, or adjusts or settles claims on residents of the state."  LSA-R.S. 22:1641 (1).

[6] The State also says Express Scripts' removal is akin to the removal Phillip Morris unsuccessfully attempted in *Watson*. Pl. Mem. at 20.  Not so. Phillip Morris, a tobacco company, never contracted with the federal government. Instead, it argued that it was acting under a federal officer by virtue of operating in a highly regulated industry.  The Supreme Court not only rejected that argument but distinguished Phillip Morris's removal from those made by federal contractors because "the assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks."  551 U.S. at 153.  *Watson* supports removal here.

added).    To "relate to" an act for federal officer removal, a defendant must show only that its
alleged conduct is "'connected or associated with' (or 'related to') a federal directive." *St. Charles
II*, 990 F.3d 447, 454 (5th Cir. 2021) (quoting *Latiolais*, 951 F.3d at 291, 296).  The "relating to"
any act language was added in 2011 in the Removal Clarification Act.  Pub. L. No. 112-51, §
2(b)(1)(A), 125 Stat. 545. "Congress passed the Removal Clarification Act to amend § 1442
because Congress felt that the courts were construing the statute too narrowly." *Goncalves By &
Through Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1250 (9th Cir. 2017).  In
amending the statue in 2011, "Congress broadened federal officer removal to actions, not just
causally connected, but alternatively connected or associated, with acts under color of federal
office." *Latiolais*, 951 F.3d at 292.  The "relating to" language Congress used "is broad in ordinary
and legal usage." *Id.* at 295.[7] Thus, a removing party does not even need to show a "causal nexus"
between the acts complained of and the work directed by a federal officer. *Id.* at 296.

Louisiana asserts that its claims are "completely unrelated" to Express Scripts' obligations
under the TRICARE contract and statute.  Pl. Mem. at 22.  But Louisiana's pleading provides
another story.  As explained above, the out-of-pocket costs TRICARE beneficiaries must pay are
all dictated by the TRICARE contract and federal law.  Louisiana alleges that, without exception,
"Louisiana diabetics were dispensed the at-issue drugs and made out-of-pocket payments based
on the false list prices generated by the scheme." Am. Pet. ¶ 141.  The state further alleges, again
without exception, that "diabetic residents [have] been overcharged by millions of dollars in out-

---

[7] Federal officer removal is not limited to employees of the federal government. Congress has authorized not only the
United States, its agencies, and its officers to remove, but also "any person acting under that officer . . . for or relating
to any act under color of such office."  42 U.S.C. § 1442(a)(1).  Thus, Congress has recently *expanded* federal officer
removal by agents of federal officers.

of-pocket costs." *Id.* ¶ 176.[8]  To remedy these supposed wrongful out-of-pocket payments and "overcharges," Louisiana alleges—without exception—that "[e]ach at-issue purchase made within the State for diabetes medications at the prices generated by the Insulin Pricing Scheme constitutes a separate violation of LUTPA."  Am. Pet. ¶ 187.  For "each" violation the State seeks a civil penalty.  *Id.* ¶ 189; *see also* LSA-R.S. 51:1407(B) (permitting courts to impose penalties for "each violation" of the LUTPA if it finds defendants had the "intent to defraud").  The State also seeks "any relief necessary to compensate any aggrieved persons for any loss resulting from Defendants' violations of LUTPA."  Am. Pet. ¶ 190.  Such relief includes "restitution and disgorgement."  *Id.* at 46 (praying for "restitution and disgorgement" under LUTPA).  The State also claims—without exception—that "[e]ach sale and/or resale in Louisiana of the at-issue diabetes medications at supra-competitive prices constitutes an independent violation[] of the Louisiana Monopolies Act."  Am. Pet. ¶ 202.  The State seeks civil fines for each such "violation."  *Id.* at 46 (praying for "civil fines as allowed under LSA-R.S. 51:122 and 51:137 for Defendants' violations").  And for unjust enrichment, the State also seeks to "disgorge for the benefit of the State all unlawful or inequitable proceeds received by them."  Am. Pet. ¶ 215.[9]

The State's pleading reveals that the State seeks to hold Express Scripts liable for each and every purchase and sale of insulin in the State through, at least, the use of civil penalties, fines, restitution, and disgorgement.  Express Scripts has shown it is "connected" to the purchase and sale of insulin in the State through Express Scripts' performance under the TRICARE contract, especially as it relates to the collection of copayments and processing of claims.  Express Scripts

---

[8] The State doubles down on its focus on out-of-pocket costs in the memorandum supporting its motion to remand by claiming it will prove that "Louisiana diabetics were dispensed at-issue drugs and made out-of-pocket payments based on manipulatively inflated list prices generated by the Insulin Pricing Scheme."  Pl. Mem. at 22.

[9] These allegations and prayers for relief cannot be squared with the State's argument that the "*parens patriae* nature of the action" makes the collection of copayments "irrelevant."  *See* Pl. Mem. at 8–9.

easily clears the low hurdle of showing its conduct at the direction of a federal officer is "related to" or "connected" to the State's claims.

The State's responses lack merit.  The State first tries to argue that removal is improper because the federal government did not authorize *all* of the conduct alleged in the complaint.  *See* Pl. Mem. 22–24.  The State attacks Express Scripts' removal for failing to show "that every Louisiana citizen that either serves or has ever served in the U.S. armed forces . . . receives health insurance prescription benefits for at-issue insulin products exclusively pursuant to the terms of the TRICARE contract."  Pl. Mem. at 23–24.  Similarly, the State claims removal is improper because the TRICARE contract is a "general contract that makes no specific mention of either insulin products or Louisiana citizens."  *Id.* at 24.  The State improperly reads the need for a "connection" to the complained-of conduct as requiring a complete and total unity rather than the actual requirement of being "connected to" the federal direction.  The State's position is both unsupported by any legal authority, and wrong.  *See Latiolais*, 951 F.3d at 292 ("relating to" in Section 1442(a) only requires "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.").

The State also quotes at length *Mesa v. California*, 489 U.S. 121 (1989), a case involving criminal defendant federal employees who sought to remove the traffic violations against them to federal court under Section 1442(a)(1).  But the *Mesa* court only confirmed that a defendant must have a federal defense to remove.  *Id* at 139.  The court did not address the "connection" prong for federal officer removal at all—and any musing by the Supreme Court in 1989 would be irrelevant in any event because Congress amended Section 1442(a) in 2011.  *See* Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545.  *Mesa* is inapposite.

**C.      Express Scripts Has Asserted Colorable Federal Defenses.**

For federal-officer removal purposes, a defense only needs to be colorable. *Latiolais*, 951

F.3d at 296 (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)). "Colorable" is a low bar;

a defense is colorable unless it is "immaterial and made solely for the purpose of obtaining

jurisdiction" or "wholly insubstantial and frivolous." *Id.* at 297 (quoting *Zeringue v. Crane Co.*,

846 F.3d 785, 790 (5th Cir. 2017)). Express Scripts has raised the federal defenses of government-

contractor immunity and preemption in its notice of removal. NoR ¶¶ 42–50. Both are colorable

here.

The federal government contractor defense is an application of derivative sovereign

immunity first articulated by the Supreme Court in *Boyle v. United Techs. Corp.*, 487 U.S. 500

(1988) in the context of a tort suit against a military contractor. *Accord Yearsley v W.A. Ross

Constr. Co.*, 309 U.S. 18, 20–21 (1940) ("[I]t is clear that if th[e] authority to carry out the project

was validly conferred . . . [by] Congress, there is no liability on the part of the contractor for

executing its will."). Stripped to its "essentials," the government contractor defense is a claim that

"[t]he Government made me do it." *In re Katrina Canal Breaches Litig.*, 620 F.3d 455, 465 (5th

Cir. 2010). After *Boyle*, many courts have recognized that "it is at least plausible that the

government contractor defense could apply outside the military procurement context." *Bennett v.

MIS Corp.*, 607 F.3d 1076, 1090 (6th Cir. 2010); *see also Jacks v. Meridian Res. Co., LLC*, 701

F.3d 1224, 1235 (8th Cir. 2012) (Blue Cross Blue Shield can assert federal officer removal because

contractor defense could apply to "non-military service contractors"), *abrogated on other grounds

by BP P.L.C. v. Mayor & City Council of Baltimore*, 209 L. Ed. 2d 631 (2021); *Hudgens v. Bell

Helicopters/Textron*, 328 F.3d 1329, 1333–34 (11th Cir. 2003) (defense applicable where private

service contractor defending a negligent maintenance-contract lawsuit); *Carley v. Wheeled Coach*,

991 F.2d 1117, 1123 (3d Cir. 1993) (defense available to non-military contractors); *Guillory v.

*Ree's Cont. Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994) (holding government contractor defense "applies to all contractors, not just military contractors, and that it applies to performance contracts, not just procurement contracts."). The State's complaint that the TRICARE contract does "not relate to military specifications or unique miliary needs or functions of any kind" (Pl. Mem. at 29) is of no moment given the potential availability of the defense. *See Jacks*, 701 F.3d at 1235 (lack of circuit precedent on government contractor defense does not "defeat the plausibility of the defense").

Along with the sovereign immunity-based defense of government-contractor immunity, Express Scripts asserts the federal defense of preemption. "Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003). Congress was express that state or local laws are preempted by contracts entered into in connection with TRICARE. *See* 10 U.S.C. § 1103(a) ("A law or regulation of a State or local government relating to health insurance, prepaid health plans, or other health care delivery or financing methods shall not apply to any contract entered into pursuant to this chapter by the Secretary of Defense"). And the DoD's implementing regulations similarly recognize that any "State or local law relating to health insurance, prepaid health plans, or other health care delivery or financing methods is preempted and does not apply in connection with TRICARE regional contracts." 32 C.F.R. § 199.17(a)(7).

Fundamentally, both defenses involve the same inquiry into whether the Louisiana laws the State seeks to enforce in this action conflict with Express Scripts' obligations under the TRICARE contract. *See Boyle*, 487 U.S. at 512 (government contractor defense is available when "significant conflict" exists between an identifiable "federal policy or interest and the [operation]

of state law"); *Arana*, 338 F.3d at 439 (preemption is available "when a federal law conflicts with state law").  Under the State's own allegations, the conflict is as plain as it is irreconcilable.

The State contends its citizens pay too much in out-of-pocket costs for insulin products. Am. Pet. ¶ 141.  ("Louisiana diabetics were dispensed the at-issue drugs and made out-of-pocket payments based on the false list prices generated by the scheme."); *id.* ¶ 176 (The state further alleges, again without exception, that "diabetic residents [have] been overcharged by millions of dollars in out-of-pocket costs"); *see also supra* III.B.  And the State seeks to remedy those supposedly excessive out-of-pocket costs by seeking civil penalties, fines, restitution, and disgorgement.  *Supra* III.B.  But the out-of-pocket costs TRICARE beneficiaries pay in the form of copayments are set by federal statute and contract.   NoR ¶ 32 (citing 10 U.S.C. § 1074g(a)(6)(A)); NoR ¶ 33 (citing NoR Ex. B at § C.8.1.1).  And Express Scripts is required to cause the collection of those copayments by processing TRICARE beneficiaries' claims.  NoR ¶¶ 34–35.  The State's wholesale attack on out-of-pocket costs for insulin covers out-of-pocket costs for TRICARE beneficiaries.  And Express Scripts can respond that "the government made" Express Scripts collect the out-of-pocket costs of TRICARE beneficiaries.  *In re Katrina*, 620 F.3d at 465.

But that's not all.  Louisiana also seeks an injunction that could implicate Express Scripts' obligations to DoD.  Louisiana seeks an injunction "to restrain Defendants' violations of LUTPA," which Louisiana defines as including "[r]eceiving payments to which [Defendants] were not entitled," "[r]eceiving payments in a greater amount than that to which they were entitled," and "[c]ausing financial and physical harm to Louisiana consumers who require at-issue medications." Am. Pet. ¶¶ 181, 188.  Louisiana does not carve out TRICARE beneficiaries from those who would be impacted by any injunction it seeks.  Accordingly, Louisiana's pleading shows that Louisiana

17

could seek an injunction that, if granted, would purport to prohibit Express Scripts from collecting the copayments from TRICARE beneficiaries that federal law and the TRICARE Contract mandate be collected—thereby creating another conflict between Louisiana law and Express Scripts' obligations under the TRICARE Contract.

The State does not squarely respond to Express Scripts' asserted defense in the section purporting to challenge Express Scripts stating a colorable federal defense. *See* Pl. Mem. at 26–30. And the State does not address its claim for injunctive relief at all, thereby ceding the point. *See, e.g.*, *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) ("arguments raised for the first time in a reply brief are generally waived"); *Miley v. Ard*, 2018 WL 6003869, at *3 (M.D. La. Nov. 15, 2018) ("The Court need not consider arguments raised for the first time in a reply brief.").

The State's response, rather, is to divine a supposed inconsistency between Express Scripts asserting that (1) the State's alleged conduct is "related to" Express Scripts' obligations under the TRICARE contract and (2) that Express Scripts was serving as an "alter ego" of the DoD when performing its obligations under TRICARE. *See* Pl. Mem. at 29–30. This supposed inability to "have it both ways" stems from the implausibility that the federal government would "falsely inflate[] the prescription-drug prices that it itself is paying on behalf of its own employees." *Id.* at 30. The State did not provide any authority for this argument, so it is not clear what rationale the State is adopting. But none of the pleaded federal defenses requires Express Scripts to show that the federal government tried to injure itself to satisfy the elements of removal. As demonstrated above, Express Scripts has pleaded a colorable defense because a conflict exists between Express Scripts' obligations in serving the DoD and Louisiana's pleaded claims.

For preemption, the State attacks a strawman. The State spends nearly 10 pages trying to show that Express Scripts did not show that complete preemption supports the Court's jurisdiction.

18

*See* Pl. Mem. at 30–39.  But Express Scripts did not remove based on complete preemption, which is a federal question basis under 28 U.S.C. § 1441(c).  Rather, Express Scripts removed under Section 1442(a) based on the colorable federal *defense* of traditional or conflict preemption based on the express conflict preemption included in the TRICARE statute and implementing regulations.  "[C]onflict preemption and complete preemption are two distinct inquiries."  *Cal. Spine & Neurosurgey Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, 548 F. Supp. 3d 934, 946 (N.D. Cal. 2021).  And in this case, "complete preemption is not an issue because the defendants only invoke the federal officer removal statute as a basis for subject matter jurisdiction."  *Id.*  The last third of the State's brief attacks a theory of jurisdiction Express Scripts never invoked.

## IV.   The Court Should Not Cause Any Order of Remand to be Mailed Until Defendants Have an Opportunity to Notice an Appeal.

To ensure the full and fair consideration of removal, if the Court ultimately orders remand, the Court should delay the ministerial act of mailing the order to the state court to preserve Defendant's right to appeal the remand order.  The mailing of a certified order of remand is the formal act that causes jurisdiction to return to the state court.  *See* 28 U.S.C. § 1447(c).  The statute is silent, however, about when the order must be mailed.  For federal officer removal, Congress created a unique right to appeal any remand order.  28 U.S.C. § 1447(d).

This Court should therefore delay mailing any remand order by one week "to prevent rendering the statutory right to appeal 'hollow.'"  *Northrop Grumman Tech. Servs., Inc. v. Dyncorp Int'l LLC*, 2016 WL 3346349, at *3 (E.D. Va. June 16, 2016) (citing cases); *see also Indiana State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Grp., Inc.*, 2005 WL 2237598, at *1 (M.D. Tenn. Sept. 12, 2005) ("If the case is actually remanded, and the state court proceeds to move it forward, the appellate right would be an empty one").  In addition, delaying

the mailing of the certified order avoids unnecessary confusion and inefficiencies.  If the Fifth Circuit "find[s] that this Court has subject matter jurisdiction, any proceedings that would have taken place in the state court since this Court's Remand Order would likely be rendered ineffective and a nullity." *See Bank of Am., N.A. v. El Paso Natural Gas Co.*, 2017 WL 9478457, at *1 (W.D. Okla. Jan. 12, 2017).  Holding off on mailing any remand order avoids that unnecessary outcome.  The Court should therefore direct the clerk not to mail any order of remand for at least 7 days after the entry of a remand order, should one issue, to preserve Defendant's rights to appeal the order.

## <u>CONCLUSION</u>

The Court should deny Louisiana's motion to remand.

Dated: June 23, 2023                              Respectfully submitted,

/s/ Keith W. McDaniel                
Keith W. McDaniel (Bar No. 17992)
**McCranie Sistrunk Anzelmo Hardy McDaniel & Welch LLC**
195 Greenbriar Blvd, Suite 200
Covington, LA 70433
Tel: (504) 846-8330
Fax: (800) 977-8810

-and-

Jason R. Scherr (pro hac vice)
Patrick A. Harvey (pro hac vice)
Lindsey Levy (pro hac vice)
**Morgan, Lewis & Bockius LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel: (202) 739-3000
Fax: (202) 739-3001

*Attorneys for Express Scripts Administrators, LLC d/b/a Express Scripts*