# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                 Plaintiff,<br><br>   v.<br><br>ELI LILLY AND COMPANY, et al.,<br><br>                 Defendants. | Case No. 2:23-cv-01929-SPG-SK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [ECF NO. 78]** |

Before the Court is Plaintiff's Motion to Remand the case back to Los Angeles County Superior Court. (ECF No. 78). Defendants CaremarkPCS Health, LLC and Express Scripts, Inc., both of whom filed notices of removal, oppose the Motion. (ECF Nos. 93, 94). Having considered the parties' submissions, the relevant law, the record in this case, and the arguments of counsel during the hearing on the motion, the Court **GRANTS** Plaintiff's Motion and Remands this Action to Los Angeles County Superior Court for all further proceedings.

## I. BACKGROUND

### A. Factual Background

Plaintiff, the People of the State of California, brings this suit against three manufacturers of insulin, Eli Lilly, Novo Nordisk, and Sanofi Aventis (together "Manufacturer Defendants"), as well as three pharmacy benefit managers, who manage the relationships between insurance providers and manufacturer defendants, CVS Caremark, Express Scripts, and OptumRx (together "PBM Defendants"). (ECF No. 1-1 ("Compl.") ¶¶ 4–5). At a high level, the lawsuit alleges that the PBM Defendants conspired with the Manufacturer Defendants to artificially raise the price of insulin paid by California diabetics. (*Id.* ¶¶ 1–3). Specifically, Plaintiff alleges that the Manufacturer Defendants conspired together to raise insulin prices in lockstep, and thereby defeat competitive downward pressure. (*Id.* ¶ 6). Plaintiff also alleges that the PBM Defendants obtained "significant secret rebates" from the Manufacturer Defendants in exchange for placing their insulin products favorably on formularies.[1] (*Id.* ¶ 7). Based on these allegations, Plaintiff brings claims under the California Unfair Competition Law, Business and Professions Code section 17200, as well as a claim for unjust enrichment. (*Id.* ¶¶ 225–37). Two of the three PBM Defendants, Express Scripts and CVS Caremark (together "Removing Defendants"), removed this Action to Federal Court based on factual allegations they assert are related to work they perform on behalf of federal officers. (ECF Nos. 1, 5).

### B. Procedural History

Plaintiff filed the Complaint in this Action on January 12, 2023, in Los Angeles County Superior Court. (ECF No. 1-1). On March 15, 2023, Express Scripts removed the action to this Court, invoking the federal officer removal statute, 28 U.S.C. § 1442. (ECF

---

[1] Formularies are lists of the prescription drugs covered by particular health insurance plans. (Compl. ¶ 5). One role performed by the PBM Defendants is determining which manufacturers' prescription drugs appear on such formularies. (*Id.*). As a part of setting such formularies, PBMs also negotiate post-sale discounts or rebates that the manufacturers will provide to the PBM if a consumer fills a prescription for one of the manufacturer's drugs. (*Id.*).

No. 1). Caremark also filed a Supplemental Notice of Removal on March 15, 2023, under the federal officer removal statute. (ECF No. 5). On April 14, 2023, Plaintiff timely filed the instant Motion to Remand the action back to Los Angeles County Superior Court.

## II.  LEGAL STANDARD

The "[f]ederal courts are courts of limited jurisdiction." *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (internal citation omitted). Therefore, a removing party must demonstrate that an action falls within the categories of federal subject matter jurisdiction to avoid remand. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33–34 (2002). One such basis for removal arises for federal officers, who are permitted to remove civil actions filed against them in state court if "the United States or any agency thereof or any officer (or any person acting under that officer)" is sued "in an official or individual capacity, for or relating to any act under color of such office . . . ." 28 U.S.C. § 1442(a)(1). While § 1442 is colloquially described as "federal officer removal," as the statute explains, it may also extend to private persons under certain circumstances. *Id.*

To remove an action to federal court pursuant to federal officer jurisdiction under 28 U.S.C. § 1442(a)(1), a private person must establish: "(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (hereinafter "*Mateo III*") (citing *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019)). To establish a sufficient causal nexus, a private person must demonstrate "(1) that the person was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *Id.* (citing *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017)). Federal courts are generally directed to interpret § 1442 broadly in favor of removal. *Goncalves*, 865 F.3d at 1244. However, Defendants seeking removal "still bear the burden of proving by a preponderance of the evidence that

-3-

the colorable federal defense and causal nexus requirements for removal are factually supported." *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (quoting *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1000 (9th Cir. 2021).

## III. DISCUSSION

Plaintiff challenges Defendants' arguments for removal on two primary bases. First, Plaintiff argues that Defendants have not met their burden to demonstrate a causal nexus between Plaintiff's claims and actions taken pursuant to a federal officer's directions. Plaintiff bases this argument both on their Complaint, which includes a disclaimer, and on subsequent repeated waivers. Second, Plaintiff argues that neither removing Defendant can demonstrate a colorable federal defense. Because the Court finds that no causal nexus exists here, it does not reach the issue of federal defenses.[2]

### A. Factual Contentions

#### 1. Caremark's Allegations of Causal Nexus

Caremark bases its argument for federal officer removal on its negotiation of formularies for Federal Employee Health Benefits Act ("FEHBA") insurance plans. (ECF No. 94 at 8). Neither party disputes that the United States Office of Personnel Management ("OPM") administers a federal employment benefits program under FEHBA, including provision of health insurance. (*Id.*; ECF No. 98 at 16). Caremark further provides evidence that OPM contracts with private insurance carriers to provide federal employees' health insurance. These health plans, in turn, use PBMs, like Caremark, to administer the pharmacy component of the benefit plan. (ECF No. 94 at 8). Therefore, OPM does not directly contract with the PBMs, but Caremark argues that it is subject to strict regulations set in place by OPM due to its administration of FEHBA plans. (*Id.*). For instance, OPM requires that PBMs that "negotiate[] and collect[] rebates" must "credit to the Carrier either as a price reduction or by cash refund the value of all [rebates] properly allocated to the Carrier." (*Id.*). Caremark also argues that OPM requires PBMs administering pharmacy

---

[2] Plaintiff does not challenge that Defendants each qualify as a "person" under the statute.

-4-

benefits of FEHBA insurance programs to report amounts of Manufacturer Payments and other detailed information. (*Id.* at 9). Because Caremark contracts with "a number of FEHBA plans to provide PBM services," it states that it has been subject to the OPM requirements placed on PBMs regarding disclosure and pass-through of rebates. (*Id.*). Additionally, in its Opposition to the present Motion, Caremark argues that it negotiates with drug manufacturers regarding formulary placement on behalf of all its insurance clients, rather than conducting specific negotiations for FEHBA insurance programs. (*Id.* at 10). Therefore, Caremark argues that Plaintiff cannot effectively disclaim or waive any claims related to negotiations involving FEHBA plans.

### 2. Express Script's Allegations of Causal Nexus

Express Scripts bases its argument for removal on its administration of pharmacy benefits for the DoD's TRICARE program. (ECF No. 1 ¶¶ 1–2). In support of its argument for removal, Express Scripts provides its contract with the Department of Defense (hereinafter "DoD"). (ECF No. 1-2). Under that contract, Express Scripts states that it both provides pharmacy benefit management services for the DoD and administers the mail order pharmacy portions of the health benefits. (ECF No. 1 ¶¶ 2–3). Express Scripts states that under the agreement it dispenses medications "purchased by the DoD at rates negotiated directly between the federal government and drug manufacturers." (*Id.* ¶ 3). Express Scripts argues that it is performing a duty that Congress has required the Secretary of Defense to perform. (*Id.* ¶ 24). Additionally, Express Scripts states that the DoD requires Express Scripts to use a "DoD Uniform Formulary, a tiered cost sharing structure, and a preference for generic over branded products." (*Id.* ¶ 27). Thus, Express Scripts states that it acts as a "fiscal intermediary on behalf of DoD" in its role as PBM under the TRICARE Contract. (*Id.*). Express Scripts adds that its collection of copayments from beneficiaries is likewise at the direct instruction of DoD. (*Id.* ¶ 30).

### 3. Plaintiff's Disclaimer and Waiver

Plaintiff, in turn, points to the language of the Complaint, including an express disclaimer, to argue that there is no causal nexus between Removing Defendants' federally

directed activities and the claims in this action. The Complaint includes the following disclaimer in a footnote:

> As discussed more fully in the body of the Complaint, this lawsuit relates to the unlawful, unfair, and fraudulent inflation of insulin's price and the relationship of that inflation to the PBM Defendants' market power. It does not challenge the creation of custom formularies for a federal officer, such as for any Federal Employees Health Benefits Act or TRICARE governed health benefits plan. Furthermore, it does not seek to recover moneys paid by the federal government pursuant to such plans, nor does it seek the recovery of federally mandated co-pays that were paid by such plans' patients. As such, the Complaint does not seek relief from any PBM Defendants that is governed by or available pursuant to any claim(s) involving a federal officer associated with any Federal Employees Health Benefits Act or TRICARE-governed health benefits plan.

(ECF No. 1-1 ¶ 41, n.1). Additionally, in the instant Motion, Plaintiff further reiterates that it waives any challenges to: (1) Express Scripts' PBM work for DoD under the TRICARE Contract; and (2) Caremark's negotiation of rebates when creating formularies for health plans under FEHBA. (ECF No. 78-1 at 2, 17, 23). Further, at oral argument, Plaintiff represented that it is not seeking to bring any claims or seek any remedies against Express Scripts or Caremark related to their work on TRICARE health plans or FEHBA health plans, respectively.

**B.  Analysis**

    1.  <u>The Sufficiency of Removing Defendants' Allegations of Causal Nexus</u>

Courts consider several factors to determine whether a private person is "acting under" a federal officer. For instance, if an agency relationship appears to exist between the person and the officer, this may suffice to establish federal officer jurisdiction. *See*

*Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 151 (2007). However, even in the absence of a traditional agency relationship, if the officer provides "subjection, guidance, or control" over the person, or the relationship between the two "is an unusually close one involving detailed regulation, monitoring, or supervision," a private person may take advantage of federal officer jurisdiction. *Id.* at 1515–51; *see also Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (holding defense contractor properly removed case under federal officer jurisdiction in part due to "the Navy's detailed specifications regulating the warnings that equipment manufacturers were required to provide"). Courts also consider whether the actions alleged were performed in assisting the federal officer with "basic governmental tasks" that "the Government itself would have had to perform" if it failed to contract with a private firm. *Watson*, 51 U.S. at 153–54; *see also Goncalves*, 865 F.3d at 1246–47 (9th Cir. 2017) (pursuing subrogation claims on behalf of governmental agency sufficient to establish federal officer jurisdiction over private person). Finally, Courts consider "whether the private person's activity is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court." *Mateo III*, 32 F.4th at 757 (internal citations omitted).

Applying these factors, Courts have found private contractors who provide military equipment have "acted under" a federal officer such that removal is appropriate. For instance, in *Watson*, the Supreme Court cited with approval *Winters v. Diamond Shamrock Chemical Co.*, a Fifth Circuit case in which that Court found a government contractor acted on behalf of the government to produce Agent Orange for the Vietnam War. *See Watson*, 551 U.S. at 153–54 (citing *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 399–400 (5th Cir. 1998), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020)). The Fifth Circuit found federal officer jurisdiction in *Winters* in part because the private company manufactured the herbicide to help conduct a

war and pursuant to "detailed specifications concerning the make-up, packaging, and delivery of Agent Orange" from the federal government. *Id.* at 400.

The Ninth Circuit has also found federal officer jurisdiction outside the wartime context where insurers, contracting with OPM, filed a subrogation lien on behalf of OPM. *See Goncalves*, 865 F.3d at 1245–46. In finding that the insurers "acted under" OPM, the Court examined the relationship created between OPM and insurance carriers administering FEHBA plans. *Id.* The court found that the FEHBA system was meant to be one in which "OPM is responsible for the overall administration of the program while sharing the day-to-day operating responsibility with the employing agencies and the insurance carriers.'" *Id.* at 1246 (internal quotations omitted). The court also found that OPM retained "broad administrative and rulemaking authority over the program" and had "direct and extensive control over [insurance benefits] under the FEHBA." *Id.* (internal citations omitted). In addition, the court found that the insurance carrier was "not acting as an insurer so much as it was acting as a claims processor, serving as the government's agent while the government [took] the place of the typical health insurer hedging bets." *Id.* Furthermore, the court specifically singled out subrogation as an area of the FEHBA program in which the insurers went "well beyond simple compliance with the law and help[ed] officers fulfill other basic governmental tasks." *Id.* at 1247 (internal citation omitted). This was in part due to OPM's choice to send letters to carriers explaining that "FEHBA 'preempts state laws prohibiting or limiting subrogation and reimbursement. As a result, FEHB Program carriers are entitled to receive these recoveries regardless of state law.'" *Id.* The court's finding was also based on an understanding that OPM "needs someone to make reasonable efforts to pursue subrogation claims and decide when filing suit in federal court is a wise decision—and the government has delegated that responsibility to the carriers to act 'on the Government's behalf.'" *Id.* (quoting *Watson*, 551 U.S. at 156). Therefore, the court took into account "the interconnectedness between OPM and the [insurers], the [insurers'] obligation to pursue subrogation claims, and the

-8-

vital federal interest in the pursuit of subrogation claims" to find the insurers acted under a federal officer specifically "when they pursue subrogation claims." *Id.*

In contrast, the Ninth Circuit has found federal officer jurisdiction does not arise where a private person "enters into an arm's length business arrangement with the federal government or supplies it with widely available commercial products or services." *Mateo III*, 32 F.4th at 757. Similarly, mere "compliance with the law (or acquiescence to an order) does not amount to acting under a federal official who is giving an order or enforcing the law." *Id.* This remains true "even if the regulation is highly detailed and even if the firm's activities are highly supervised and monitored." *Id.* (quoting *Watson*, 551 U.S. at 153). Given these limitations, courts may not interpret federal officer jurisdiction in a way that would "expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.*

With these principles in mind, the Ninth Circuit has recently found that petroleum companies are not federal officers for purposes of removal jurisdiction where they supply gasoline and diesel fuel to the Navy Exchange Service Command (NEXCOM). *Mateo III*, 32 F.4th at 758. The contracts involved in *Mateo III*, between the companies and NEXCOM, included detailed "fuel specifications," gave NEXCOM the right to inspect delivery, site and operations, and directed NEXCOM to incorporate government branding on products. *Id.* at 758–59. However, the court found that "[t]he contracts evince an arm's-length business relationship to supply NEXCOM with generally available commercial products" and was not sufficiently closely related to "the government's implementation of federal law" that the companies faced a significant risk of state-court prejudice. *Id.* The court similarly rejected the companies' arguments for federal officer jurisdiction based on lease agreements on the Outer Shelf and a production agreement for petroleum originating in a federal reserve. *Id.* at 758–59. The court found that these too evidenced an arm's length business arrangement and compliance with federal law, rather than "the kind of

assistance required to establish that the private entity is 'acting under' a federal officer." *Id.* at 759.[3]

The facts presented here appear to fall somewhere between *Goncalves* and *Mateo III*. Adding a wrinkle, the allegations presented by Express Scripts and Caremark demonstrate different levels of federal control. For instance, Express Scripts states that DoD creates formularies and directs Express Scripts to use those formularies pursuant to a detailed contract. (ECF No. 93 at 11). The TRICARE Contract also directs Express Scripts how to collect copays from beneficiaries. (ECF No. 1).[4] Caremark, on the other hand, alleges that it contracts with insurers who in turn contract with OPM. Its role then is to set formularies and obtain rebates for plans that are governed by FEHBA. (ECF No. 94 at 6). However, under FEHBA, Caremark states that it is subject to strict regulations and obligations promulgated by OPM. (*Id.* at 8).

While the result as to each Defendant here may differ regarding whether a sufficient causal nexus has been alleged in the absence of any disclaimer or waiver, to make such a decision would ignore the express allegations made in the Complaint. Instead, before determining whether a causal nexus has been alleged by either of the Removing Defendants, the Court will consider the efficacy and impact of Plaintiff's disclaimer.

---

[3] Similarly, the Ninth Circuit also recently held that a nursing home had not demonstrated a basis for federal officer jurisdiction based on government direction during the pandemic. *Saldana v. Glenhaven Healthcare, LLC*, 27 F.4th 679 (9th Cir. 2022). Instead, the court found that, despite the unprecedented circumstances, and nursing homes' designation as part of the "national critical infrastructure," the nursing home merely followed detailed regulations. *Id.* at 685–86.

[4] In support of its argument that it has sufficiently alleged federal officer removal, Express Scripts points to a Fourth Circuit decision in its favor. *See Cnty. Bd. Of Arlington Cty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021). However, for the reasons stated below, that decision is distinguishable, at least in part, because it did not involve an express disclaimer, such as Plaintiff's here.

2. The Impact and Efficacy of Plaintiff's Disclaimer and Waiver

Both Caremark and Express Scripts challenge the efficacy of Plaintiff's disclaimer of claims related to PMB Defendants' work on behalf of FEHBA and DoD, respectively. Both Removing Defendants argue first that the Complaint's disclaimer and the waiver asserted by Plaintiff in their Motion to Remand should not be credited.[5] The Court disagrees. The disclaimer in the Complaint deals with specific claims—i.e. claims arising out of the PBM Defendants' work on behalf of FEHBA and DoD—rather than generally disclaiming the Court's jurisdiction. *See, e.g.*, *Dougherty v. A O Smith Corp.*, No. 13-1976-SLR-SRF, 2014 WL 3542243 (D.Del. July 16, 2014) (examining case law comparing jurisdictional disclaimers and post-removal claim disclaimers). Therefore, the Court will not simply set aside Plaintiff's disclaimer as artful pleading. Instead, the Court examines whether the disclaimer in the Complaint, and Plaintiff's subsequent waivers, are sufficient to remove any causal nexus that might otherwise have existed between Plaintiff's Claims and the DoD or OPM.

Caremark and Express Scripts challenge the efficacy of the disclaimer on similar bases. First, they both argue that the disclaimer is ineffective based on the factual nature of their work for DoD and OPM. For instance, Caremark argues that, because it negotiates formularies on behalf of all its clients jointly, the negotiations on behalf of OPM cannot, as a matter of fact, be set aside. (ECF No. 94 at 10). Meanwhile Express Scripts states that it is DoD who creates the formularies it applies, meaning that Plaintiff's disclaimer of creation of "custom formularies" for TRICARE is ineffective. (ECF No. 93 at 11). This appears to rely on an overly narrow interpretation of one portion of the disclaimer, and

---

[5] Removing Defendants argue that the Court should not credit the post-removal clarifying waivers posited by Plaintiff. However, the Court will consider Plaintiff's attempts to clarify their disclaimer through further waivers, finding that such waivers further demonstrate the Court's lack of jurisdiction. *See Fisher v. Asbestos Corp. Ltd.*, No. 2:14-cv-02338-WGY-(FEMx), 2014 WL 3752020, at *4 (C.D. Cal. Jul. 30, 2014) (crediting post-removal waiver in federal officer jurisdiction case); *see also Marcher v. Air and Liquid Systems Corp.*, No. 2:22-cv-00059-RGK-MRW, 2022 WL 562268, at *2 (C.D. Cal. Feb. 24, 2022) (same).

overlooks the intent of the disclaimer as buttressed by the Plaintiff's waiver in the Remand Motion. Similarly, Caremark's indivisibility argument stretches federal officer jurisdiction too far. A number of courts have credited similar types of waivers that seek to disclaim work performed on behalf of government officers while suing private contractors for work performed on behalf of private organizations. *See Fisher v. Asbestos Corp. Ltd.*, No. 2:14-cv-02338-WGY-(FEMx), 2014 WL 3752020 at *4 (C.D. Cal. Jul. 30, 2014) (finding waiver of asbestos injury from work on Naval vessels valid); *Heilner v. Foster Wheeler LLC*, No. 1:22-CV-00616, 2022 WL 3045838, at *4 (M.D. PA. Aug. 2, 2022) (finding same). At oral argument, Caremark argued that the asbestos cases presented meaningfully different facts than those the Court is faced with in the present Motion. Specifically, Caremark argued that work performed on specific vessels could be divided in a way that joint negotiations on behalf of multiple parties could not. While such a division may be more difficult here, the Court is not persuaded that it cannot be done. Furthermore, Caremark's argument, when carried to its logical end, assumes that any organization that contracts with the government, including for services that are also available to private organizations, may *always* take advantage of federal officer removal if any portion of the work it performs is on behalf of *both* private and government organizations, even if the government services are not at issue. Yet Caremark has not provided authority for this proposition, nor has the Court found any such authority, especially under circumstances similar to the present case, where Plaintiff has repeatedly demonstrated that it does not seek to sue over any conduct performed on behalf of a federal entity. Therefore, the Court rejects the Removing Defendants' factual indivisibility arguments.

Express Scripts also argues that the joint and several liability alleged in the Complaint between Manufacturer Defendants and PBM Defendants defeats any attempt to waive claims as to the PBM Defendants. Specifically, Express Scripts argues that Plaintiff still seeks to recover from the Manufacturer Defendants for improper rebates affecting insureds TRICARE plans. (ECF No. 93 at 13–14). However, Plaintiff does not allege that the Manufacturer Defendants directly contracted with OPM or DoD. Instead, it is primarily

the PBM Defendants who, in negotiating rebates for formulary placement, interact with insurance plans, including FEHBA and TRICARE plans.[6] Therefore, if Plaintiff waives and disclaims all claims arising out of the PBM Defendants' negotiation on behalf of FEHBA and TRICARE plans, and does not seek damages related to copays paid under these plans, it is difficult to see how the requisite causal nexus would continue to exist. Thus, the Court finds that, while there is joint and several liability, there would be no government-directed conduct left in the wake of Plaintiff's express disclaimer to which such liability would attach.

Third, Express Scripts argues that the disclaimer is ineffective because Plaintiff later seeks civil penalties "for alleged violations perpetrated against service members or veterans." (ECF No. 93 at 7). However, as all parties appear to acknowledge, there are veterans and service members who do not rely on TRICARE for their insurance and, instead, contract with private insurance providers. This, as Plaintiff admits, is a small number. However, the Court agrees with Plaintiff that, however small, that population does not negate the disclaimer. Therefore, this argument by the PBM Defendants also fails to evidence a lack of efficacy in the disclaimer.

Finally, the PBM Defendants argue that the Complaint's Prayer for Relief defeats the waiver and disclaimer because it seeks injunctive relief "including, but not limited to" the Complaint's allegations. (ECF No. 93 at 7; ECF No. 94 at 17). In response, Plaintiff argues that the injunctive relief it seeks is irrelevant to the inquiry. Plaintiff supports this argument by stating that the nexus inquiry focuses only on the "challenged acts" of the defendants and not the relief sought. (ECF No. 98 at 12). The Court agrees that the disclaimer, and subsequent repeated waivers, have left the Complaint devoid of challenges to actions by the PBM Defendants on behalf of OPM and DoD. The Court likewise agrees with Defendants that Plaintiff should be unable to later seek injunctive relief extending to

---

[6] To the extent DoD does directly contract with the Manufacturer Defendants, as Express Scripts represents, Plaintiff has subsequently waived any such claims. And, as outlined above, the Court credits the post-removal waiver here.

negotiations on behalf of OPM and DoD. However, at oral argument, Plaintiff affirmed that it does not seek such relief.[7]

Therefore, the Court recognizes and accepts Plaintiff's decision to disclaim any claims that it may have against Express Scripts and Caremark for inflation of insulin pricing felt by beneficiaries of the TRICARE and FEHBA health plans. There is no evidence of judicial manipulation or forum shopping, nor do Defendants argue this beyond a short argument regarding artful pleading. As explained above, Plaintiff's disclaimer, and later repeated waivers, negate any causal nexus that might otherwise have existed between Plaintiff's claims and the Removing Defendants' conduct on behalf of government officers. Therefore, the Court need not reach the issue of whether the Defendants have adequately asserted a colorable federal defense.[8] Accordingly the motion to remand is granted.[9]

---

[7] At the hearing, Caremark and Express Scripts argued that any injunctive relief would necessarily implicate work they perform on behalf of OPM and DoD, respectively. However, given Plaintiff's repeated waiver of any such claims, the mere possibility of a future injunction does not create federal officer jurisdiction.

[8] In addition, remand is supported by additional policy rationales here. First, as Plaintiff argues, suits by the Attorney General on behalf of citizens of the state of California implicate strong state interests in having the suit heard in state court. *See Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 679 (9th Cir. 2012). Second, the policy rationales behind federal officer jurisdiction do not support removal here. With any claims related to conduct on behalf of DoD and OPM waived, it is not clear how the private companies could be seen as performing actions at the direction of federal law, and therefore be in danger of discrimination in state court.

[9] However, out of recognition of Express Scripts request to delay the mailing of the remand to Superior Court, and Plaintiff's lack of opposition to such request, the Court will delay mailing of the remand for seven (7) days to allow for the filing of an appeal if one is still desired.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion to remand is granted.

**IT IS SO ORDERED.**

DATED: June 28, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE