UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: INSULIN PRICING LITIGATION                                                          MDL No. 3080


**TRANSFER ORDER**


  **Before the Panel:**[*]  The actions in MDL No. 3080 concern an alleged scheme between insulin manufacturers and pharmacy benefit managers ("PBMs") to artificially and fraudulently inflate the price of insulin and other diabetes medications.  Plaintiff in the action listed on Schedule A (*State of Louisiana*) moves under Panel Rule 7.1 to vacate the order conditionally transferring the action to MDL No. 3080, arguing that its action is one "arising under the antitrust laws" within the meaning of Section 1407(g) and, as a consequence, is exempt from transfer.  PBM defendants CVS Health Corporation and CaremarkPCS Health, L.L.C. (together, "CVS"), Express Scripts Administrators, LLC, and OptumRx, Inc., oppose the motion and support transfer.

I.

  Plaintiff's objection to transfer stems principally from legislation enacted last year to extend the exemption originally created for actions by the United States "arising under the antitrust laws" to actions by states.  The legislation at issue is part of the Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. gg, Title III, § 301, 136 Stat. 4459, 5970 (Dec. 29, 2022).  Specifically, Section 301, titled "Venue for State Antitrust Enforcement," amended Section 1407(g) to add the words "or a State" to the exemption for U.S. antitrust enforcement actions and deleted the carve-out of Section 4A of the Clayton Act concerning damages from the definition of "Antitrust laws."[1]  Thus, Section 1407(g), as amended, reads:

> (g) Nothing in this section shall apply to any action in which the United States **or a State** is a complainant arising under the antitrust laws. "Antitrust laws" as used herein include those acts referred to in the Act of October 15, 1914, as amended (38 Stat. 730; 15 U.S.C. 12), and also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C. 13, 13a, and 13b) and the Act of September 26, 1914, as added March 21, 1938 (52 Stat. 116, 117; 15 U.S.C. 56)~~; but shall not include section 4A of the Act of October 15, 1914, as added July 7, 1955 (69 Stat. 282; 15 U.S.C. 15a)~~.

---

[*] Judge Karen K. Caldwell did not participate in the decision of this matter.

[1] The Act also eliminated subsection (h) from Section 1407, which previously had permitted the Panel to "consolidate and transfer with or without the consent of the parties, for both pretrial purposes and for trial, any action brought under section 4C of the Clayton Act."

*See* 28 U.S.C. § 1407(g) (emphasis and strikeout added to show amendments).

This past year, the Panel addressed whether the recent amendment applied to a state action asserting Sherman Act claims that was centralized before the amendment's enactment. We held that it does. *See In re Google Digital Advertising Antitrust Litig.*, __ F. Supp. 3d __, 2023 WL 3828612 (J.P.M.L. June 5, 2023) (remanding *State of Texas v. Google LLC* from MDL No. 3010 to its transferor court in the Eastern District of Texas), *pet. for writ of mandamus denied sub nom.*, *In re Google LLC*, No. 23-910 (2d Cir. Oct. 4, 2023). *In re Google Digital Advertising* did not, however, address the issue raised by the plaintiff's motion to vacate CTO in the *State of Louisiana* action now before us – whether the Section 1407(g) amendment expanded the definition of "antitrust laws" to encompass state antitrust law. We turn to this question now.

II.

In opposition to transfer, the State of Louisiana argues that transfer of its action is expressly barred by the 2022 amendment to Section 1407(g) – that is, the provision exempting state actions "arising under the antitrust laws" from Section 1407 transfer. The cornerstone of this argument is that the term "the antitrust laws" logically encompasses federal *and state* antitrust law – and thus, the *State of Louisiana* action, which asserts a claim under the Louisiana Monopolies Act, is exempt from transfer. We find this argument unpersuasive.

In describing "the antitrust laws" that are "include[d]" in Section 1407(g), the statute as originally enacted in 1968 referred solely to federal antitrust laws. The exclusive reference to federal antitrust laws remains in place following the 2022 amendments. Specifically, the second sentence of subsection (g) states: "'Antitrust laws' as used herein include those acts referred to in the Act of October 15, 1914, as amended (38 Stat. 730; 15 U.S.C. 12), and also include the Act of June 19, 1936 (49 Stat. 1526; 15 U.S.C. 13, 13a, and 13b) and the Act of September 26, 1914, as added March 21, 1938 (52 Stat. 116, 117; 15 U.S.C. 56)." The only change Congress made to the definition of "the antitrust laws" was striking the clause that carved out damages actions under Section 4A of the Clayton Act from the definition. Nothing in the language amending Section 1407(g) touches on amending "the antitrust laws" to extend to state law. Thus, in our judgment, the plain language of Section 1407(g) demonstrates that the term "the antitrust laws" means federal antitrust law.

This interpretation is supported by well-known canons of statutory construction. First, Congress's limited revision to Section 1407(g) regarding federal antitrust law without any corresponding amendment addressing state antitrust law demonstrates that Congress did not intend to expand the scope of the definition. *See Regal Stone Ltd. v. Longs Drug Stores California*, L.L.C., 881 F. Supp. 2d 1123, 1129 (N.D. Cal. 2012) ("where Congress amends part of a statute and leaves another part unchanged, a court must interpret Congress's inaction as satisfaction with the unamended portion, or at least tolerance of its inadequacies"); *accord Arctic Express, Inc. v. Del Monte Fresh Produce NA, Inc.*, 366 B.R. 786, 793 (S.D. Ohio 2007) ("When Congress amends one portion of a statute, leaving another portion unchanged, it can be inferred that the decision not to alter the latter portion was just as intentional as the decision to alter the former.").

Second, "[u]nder the familiar interpretive canon *noscitur a sociis*, 'a word is known by the company it keeps.'" *Dubin v. United States*, 143 S. Ct. 1557, 1569 (2023) (quoting *McDonnell v.*

*United States*, 579 U.S. 500, 568-69 (2016)). Here, Congress defined "the antitrust laws" to "include" a series of enumerated statutes, all of which are federal. *See also Gutierrez v. Ada*, 528 U.S. 250, 254-58 (2000) (applying the canon to narrow the phrase, "any election," where it was surrounded by "six express references to an election for Governor and Lieutenant Governor"). Thus, we believe that the list of exclusively federal antitrust statutes weighs heavily in favor of interpreting "the antitrust laws" to mean federal antitrust law.

Congress's intent to identify a defined set of antitrust laws also is shown by its use of the article "the" in referring to "the antitrust laws." "It is well established that 'the' particularizes the subject which it precedes and acts as a word of limitation." *Delaware Dep't of Natural Resources and Environmental Control v. Environmental Prot. Agency*, 895 F.3d 90, 99 (D.C. Cir. 2018) (internal citation and quotation marks omitted); *accord Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1246 (9th Cir. 2012) ("In construing a statute, the definite article 'the' particularizes the subject which it precedes and is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'") (internal quotation marks and brackets omitted); *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.") (internal citation and quotation marks omitted). Plaintiff's assertion that "the antitrust laws" is a "broad reference" to all antitrust laws, both federal and state, conflicts with this canon, especially considering that Congress expressly set forth a definition that gives only federal antitrust statutes as examples.[2]

The House Report on the amendment further indicates that Congress intended the addition of "or a state" to extend the Section 1407(g) exemption to state actions that, like the United States, assert violation of the federal antitrust laws. It states, in relevant part:

> Unlike most antitrust claims brought by the United States, antitrust claims brought by a state alleging a violation of the *federal* antitrust laws are not exempt from consolidation or transfer under the JPML process. The resolution of a state's antitrust claim thus may be delayed because it is redirected to another venue, or the state may be required to coordinate or consolidate its case with slower-moving private antitrust litigation . . . .
>
> H.R. 3460 addresses these problems by exempting *federal* antitrust claims brought by a state from the JPML.

---

[2] Additionally, as defendants note, there are many federal statutes that expressly refer to both federal and state antitrust statutes when Congress intends to refer to both, yet those statutes use the term "the antitrust laws" to refer solely to federal law. For example, 15 U.S.C. § 37(a) exempts certain charitable contributions from "the antitrust laws, and *any State law similar to any of the antitrust laws*" (emphasis added); 15 U.S.C. § 4302 provides that standards development activity by standards development organizations "shall not be deemed illegal per se" in "any action under the antitrust laws, or under *any State law similar to the antitrust laws*" (emphasis added); and 12 U.S.C. § 1831u, which lists obligations regarding interstate bank mergers, notes that the section shall not be construed as affecting "(A) the applicability of the antitrust laws; or (B) the applicability, if any, *of any State law which is similar to the antitrust laws*" (emphasis added).

In contrast, Louisiana has not identified any statute in which Congress has used the term "antitrust laws" or "the antitrust laws" to refer to both federal and state laws.

*See* H.R. Rep. No. 117-494, at 2 (2022) (emphasis added).

    Plaintiff also makes policy arguments in support of its interpretation of Section 1407(g). Chief among these is that, for the 2022 amendment to have any practical significance, state law must be included because the common practice of states is to bring exclusively state, rather than federal, antitrust claims – a practice allegedly dictated by their status as "indirect purchasers" who lack standing to bring federal antitrust claims under Supreme Court precedent.[3] But plaintiff provides no factual support for its assertion that states bring exclusively state antitrust law claims, and we are aware of several state actions bringing Sherman Act claims in the years immediately preceding the Section 1407(g) amendment.[4] Thus, plaintiff's factual premise – that states do not bring federal antitrust claims – is plainly inaccurate.[5]

    For the foregoing reasons, we conclude that "the antitrust laws" as used in Section 1407(g) means solely federal antitrust law and does not encompass state antitrust law. Accordingly, the exemption for governmental enforcement actions "arising under the antitrust laws" does not apply to the *State of Louisiana* action, and that action is subject to transfer under Section 1407(a).

III.

    The sole remaining issue, then, is whether transfer under Section 1407(a) is warranted. After considering all argument of counsel, we find that the *State of Louisiana* action involves common questions of fact with the actions transferred to MDL No. 3080. We further find that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. In our order establishing this MDL, we held that centralization was warranted for actions alleging a scheme between insulin manufacturers Eli Lilly and Company, Novo Nordisk, Inc., and Sanofi-Aventis U.S. LLC, and pharmacy benefit managers CVS Caremark, Express Scripts, and Optum Rx, to artificially and fraudulently inflate the price of

---

[3] *See* Pl.'s Mot. to Vacate, Doc. No. 106, at 5 (J.P.M.L. Aug. 28, 2034) (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)).

[4] *See State of Texas v. Google LLC*, No. 20-0957 (E.D. Tex. filed 12/16/2020); *State of Colorado v. Google LLC*, No. 20-3715 (D.D.C. filed 12/17/2020); *State of New York v. Facebook, Inc.*, No. 20-3589 (D.D.C. filed 12/09/2020); and *State of Utah v. Google LLC*, No. 21-5227 (N.D. Cal. filed 07/07/2021). Additionally, at least three state actions in MDL No. 2724, *In re: Generic Pharmaceuticals Pricing Antitrust Litigation*, assert federal antitrust claims and are the subject of a Section 1407 remand motion that we will consider at our next hearing session.

[5] Plaintiff additionally argues that the critical distinction between actions that are and are not exempt from transfer under Section 1407(g) lies in the public-versus-private status of who is bringing the claims, rather than the federal or state nature of the complainant's antitrust claims, citing *United States v. Dentsply Int'l, Inc.*, 190 F.R.D. 140, 143-146 (D. Del. 1999) and *United States v. Google LLC*, __ F. Supp. 3d __, 2023 WL 2486605 (E.D. Va. 2023). These cases are inapposite. *Dentsply* was decided over 20 years before the amendment to Section 1407(g) and cannot speak to the changes enacted by the 2022 amendment. Moreover, both rulings involved federal enforcement actions under the Sherman Act, rather than state law, and thus did not address the question of transfer of a governmental enforcement action under state antitrust law.

insulin and other diabetes medications. *See In re Insulin Pricing Litig.*, __ F. Supp. 3d __, 2023 WL 5065090, at *3 (J.P.M.L. Aug. 3, 2023). The *State of Louisiana* action undisputedly concerns the same alleged insulin pricing scheme between these insulin manufacturers and PBMs.

Plaintiff argues that, despite this extensive factual overlap, transfer would undermine judicial efficiency because plaintiff has a pending motion for remand to state court that allegedly can be decided more expeditiously in its home forum in the Middle District of Louisiana. The Panel routinely has held, including in this MDL, that a pending motion for remand to state court is not an impediment to transfer as the parties can present such arguments to the transferee court.[6] Additionally, the federal officer removal issue in plaintiff's remand motion has been raised in at least one other action pending in the MDL. Transfer likely will prevent inconsistent rulings.

Plaintiff alternatively requests a stay of any transfer until the transferor court decides its motion for remand to state court. We see no need to stay transfer. The Panel's longstanding practice is to rule on transfer even though a remand motion is pending, as the transferee court can rule on the motion. *See In re Ford Motor Co. DPS6 PowerShift Transmission Prods. Liab. Litig.*, 289 F. Supp. 3d 1350, 1352 (J.P.M.L. 2018).

IT IS THEREFORE ORDERED that the action listed on Schedule A is transferred to the District of New Jersey and, with the consent of that court, assigned to the Honorable Brian R. Martinotti for inclusion in the coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
Nathaniel M. Gorton
Acting Chair

| Matthew F. Kennelly | David C. Norton |
| Roger T. Benitez | Dale A. Kimball |
| Madeline Cox Arleo | |

---

[6] *See In re Insulin Pricing Litig.*, 2023 WL 5065090, at *2 ("many of the objections raised by the parties – for example, pending motions for remand to state court . . . – are no obstacle to transfer as such matters routinely are managed by the transferee judge"); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) (explaining that "remand motions can be presented to and decided by the transferee judge," and that transferor courts wishing to rule on such motions generally "have adequate time in which to do so").

IN RE: INSULIN PRICING LITIGATION  MDL No. 3080

## SCHEDULE A

<u>Middle District of Louisiana</u>

THE STATE OF LOUISIANA v. SANOFI−AVENTIS U.S. LLC, ET AL.,
  C.A. No. 3:23−00302